Michael Dwayne HOLMES, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–97–080–CR.

Court of Appeals of Texas,
Waco.

Feb. 11, 1998.

Rehearing Overruled March 11, 1998.

---

George Roland, McKinney, for appellant.

Tom O'Connell, Criminal District Attorney, Julie Breedlove, Assistant District Attorney, McKinney, for appellee.

Before DAVIS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

DAVIS, Chief Justice.

A jury convicted Appellant Michael Dwayne Holmes of possessing a usable quantity of marihuana in the amount of two ounces or less. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121(b)(1) (Vernon Supp. 1998). The court sentenced Holmes to 120 days' confinement in the county jail and a fine of $1,500.

Holmes contends in this appeal that the court erred by:

- misconstruing article 38.23 of the Code of Criminal Procedure;

- denying his motion for an instructed verdict;

- admitting evidence obtained pursuant to an illegal search;

- denying his requested article 38.23 instruction in the charge;

- denying his requested instruction on an offense other than that with which he was charged;

- denying his request to define the term "usable quantity" in the charge;

- permitting evidence which inferred his commission of extraneous offenses;

- refusing his requested instruction on extraneous offenses; and

- overruling his objection to the State's closing argument.

Holmes argues in a final point that his counsel rendered ineffective assistance by failing to object to other portions of the State's argument which were allegedly improper. This case presents the challenge of applying settled propositions of law to a unique factual setting.

## FACTUAL BACKGROUND

McKinney Police Officer Bruce Keffer[1] stopped Holmes on December 19, 1993, ostensibly for driving his car without wearing a seatbelt. Holmes informed Keffer that he did not have his license with him at that moment and that his car was uninsured. Keffer completed a traffic citation for the violations he observed[2] and asked Holmes to step to the rear of his car to discuss the citation. Keffer testified[3] that when Holmes got out of the car, he saw "the corner of a dollar bill" "hanging out from underneath the door armrest" of Holmes's car. He asked Holmes whether "there was anything in his vehicle that [Keffer] needed to know about?" According to Keffer, Holmes responded in the negative and invited him to search the car. Keffer found $5,840 in cash and two pill bottles behind the door panel. The pill bottles each bore Holmes's name and each contained a trace of a substance Keffer suspected to be cocaine. Keffer also found two partially-smoked marihuana cigarettes in an ashtray in the right rear door of the car.

After finding the cash and the suspected cocaine, Keffer handcuffed Holmes and placed him in the front passenger seat of his police car because Holmes was too large to fit in the back seat.[4] At some point, Keffer placed the marihuana cigarettes on the driver's seat of the police car as he continued his work at the scene. When Keffer returned to his car "30 to 40 seconds" later, the cigarettes were gone. Keffer testified that Holmes was sitting in his seat "just grinning" and that he asked Holmes to step out of the car. Keffer directed Holmes to "open his lips" with his teeth clenched together, and Holmes complied. Keffer "noticed the marihuana leaves in the cracks through his teeth around the gum line."

---

1. Keffer testified in a bill of exception proffered by Holmes that he resigned his position with the City of McKinney on November 1, 1994, in lieu of termination. Holmes's counsel never asked, and Keffer never explained, why he was forced to resign. The Collin County Sheriff's Department hired Keffer as a deputy on June 1, 1996. During the interim period, Keffer worked for a construction company.

2. Keffer cited Holmes for "failure to signal, failure to display a driver's license, and failure to maintain financial responsibility." He did not cite Holmes for the seatbelt violation.

3. This is Keffer's testimony from a suppression hearing. The jury did not hear this testimony.

4. Pursuant to the court's ruling on Holmes's suppression motion, Keffer's testimony before the jury began at this point without reference, however, to the initial stop, the search of the car, or the discovery of the cash, suspected cocaine, or marihuana.

The State presented Holmes's case to the grand jury seeking an indictment for Holmes's destruction (consumption) of the marihuana and for his possession of cocaine. The grand jury no-billed Holmes on both charges.[5] Thereafter, the State filed an information in the County Court at Law on March 22, 1994, charging Holmes with possession of the marihuana.

In October 1994, the State instituted forfeiture proceedings against Holmes's car and the money found in the door compartment.[6] *See* TEX.CODE CRIM. PROC. ANN. art. 59.02 (Vernon Supp.1998). Holmes filed a motion to suppress the evidence in the forfeiture proceeding alleging that the car and money had been seized without a warrant and pursuant to an unlawful detention and search. *Id.* art. 59.03. In the hearing on the motion, Holmes testified that he was wearing his seatbelt and that he consented to Keffer conducting a search of only his person, not his car. He disputed other aspects of Keffer's testimony as well. The forfeiture court granted Holmes's motion to suppress the evidence on July 11, 1995. The court subsequently dismissed the forfeiture proceeding in October of the same year.

Holmes filed a special plea of double jeopardy and a motion to suppress in the misdemeanor proceeding, which were heard by the court on September 30, 1996. Counsel for the State informed the misdemeanor court that the State sought only to prosecute Holmes for his "repossession" of the marihuana and not for his "original" possession of the substance in the car. The court overruled the special plea and informed counsel that the suppression motion would be carried forward to trial. The case came to trial two days later. The court overruled the suppres-

sion motion but directed the State to begin its evidence from the moment when Holmes was placed in Keffer's car and the marihuana was placed on the seat beside him, "and then everything beyond that point."[7]

The State presented the testimony of Keffer and two other officers who assisted him in Holmes's arrest. The State's witnesses carefully avoided any mention of the basis for the initial stop or their other observations surrounding the investigation (*i.e.*, the discovery of the cash and suspected cocaine). However, the testimony of the witnesses frequently alluded to the fact that other matters were being investigated at the same time as the marihuana charge.

## ARTICLE 38.23

In Holmes's first point, he contends that the court misconstrued the exclusionary rule codified in article 38.23 when the court allowed the State to proceed on its "repossession" theory. The State responds that Holmes's voluntary intervening act of retaking possession of the marihuana attenuated the taint of the unlawful detention and search.

Holmes argues that article 38.23 does not allow for the use of the attenuation doctrine as an exception to the exclusionary rule codified in the statute. *See* TEX.CODE CRIM. PROC. ANN. art. 38.23 (Vernon Supp.1998). However, the Court of Criminal Appeals has specifically held to the contrary. *Johnson v. State*, 871 S.W.2d 744, 750 (Tex.Crim.App. 1994). Accordingly, we will examine the record to determine whether the court properly applied the attenuation doctrine to the facts of this case.

5. At the suppression hearing held on March 30, 1995, the State conceded that the grand jury no-billed the charges on February 24. However, the record is silent as to the year.

6. The State's forfeiture petition does not appear in the record before us. Nevertheless, Holmes's answer to the petition is in the record. Holmes filed his original answer on November 2, 1994. Thus, we can presume that the State filed its petition at some time in October. *See* TEX.R. CIV. P. 99(b).

7. The court apparently ruled in this manner because it believed that the suppression decision of

the forfeiture court constituted the "law of the case" for the subsequent prosecution insofar as it addressed Holmes's initial detention and the admissibility of the money, suspected cocaine, and marijuana recovered as a result of the original search of the car. *See Robison v. State*, 888 S.W.2d 473, 485 (Tex.Crim.App.1994); *Bass v. State*, 626 S.W.2d 769, 774–75 (Tex.Crim.App. [Panel Op.] 1982). The court expressed its opinion that the forfeiture court's order should not "be viewed as an adjudication with respect to evidence tending to prove repossession."

■ The factors generally considered in assessing whether the taint of an unlawful arrest or search has been sufficiently attenuated to allow the admission of the evidence in question are:

- whether *Miranda* warnings were given;
- the temporal proximity of the arrest and the evidence;
- the presence of intervening circumstances; and
- the purpose and flagrancy of the official misconduct.

*Brown v. Illinois,* 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975); *Dowthitt v. State,* 931 S.W.2d 244, 261 (Tex. Crim.App.1996). The first factor only applies in cases in which the evidence sought to be suppressed is testimonial in nature. *See Brown,* 422 U.S. at 603–04, 95 S.Ct. at 2261–62; *Dowthitt,* 931 S.W.2d at 261. If nontestimonial evidence seized pursuant to an illegal search or arrest is sought to be suppressed, the first factor is not utilized. *See Reed v. State,* 809 S.W.2d 940, 946 (Tex.App.—Dallas 1991, no pet.); *Matienza v. State,* 699 S.W.2d 626, 628 (Tex.App.—Dallas 1985, pet. ref'd).

### TEMPORAL PROXIMITY AND INTERVENING CIRCUMSTANCES

■ The voluntary commission by the accused of another offense after an unlawful arrest generally operates as an intervening circumstance which purges any taint flowing from the unlawful arrest. *Id.; see also State v. Mayorga,* 876 S.W.2d 176, 177–78 (Tex. App.—Dallas 1994), *rev'd on other grounds,* 901 S.W.2d 943 (Tex.Crim.App.1995) (evidence that accused resisted unlawful arrest not subject to suppression in prosecution for resisting arrest).[8] In this situation, the temporal proximity of the unlawful arrest to the subsequent seizure of evidence is given little weight. *See Reed,* 809 S.W.2d at 946; *Matienza,* 699 S.W.2d at 628. Holmes's voluntarily regaining possession of the marihuana in an apparent attempt to destroy the evidence constitutes such an intervening circumstance.

### PURPOSE AND FLAGRANCY OF POLICE MISCONDUCT

■ This factor is "one of the most important factors to be considered." *Bell v. State,* 724 S.W.2d 780, 789 (Tex.Crim.App.1986).

The clearest indications of attenuation should be required where police conduct is the most flagrantly abusive. Such conduct includes: reliance on factors in making an arrest which were so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable; an arrest effectuated as a pretext for collateral objectives; or an arrest which is unnecessarily intrusive on personal privacy.

*Id.; accord Reed,* 809 S.W.2d at 947.

The State concedes in its brief that Keffer lacked probable cause to stop Holmes. Thus, it appears that the stop was merely a pretext. Accordingly, this factor weighs heavily against the State, and "[t]he clearest indications of attenuation" are required to overcome it. *Bell,* 724 S.W.2d at 789.

### SUMMARY

■ Although Keffer's purposeful and flagrant misconduct militates strongly toward suppression, Holmes's intervening "act of free will" sufficiently purged the taint of Keffer's misconduct. *Matienza,* 699 S.W.2d at 628; *accord Mayorga,* 901 S.W.2d at 946; *see also Cooper v. State,* 956 S.W.2d 95, 97–98 (Tex.App.—Tyler 1997, pet. ref'd) (evidence of aggravated assault on peace officer admissible regardless of legality of initial detention). Thus, the court correctly applied the attenuation doctrine to the facts of Holmes's case. We overrule Holmes's first point.

## SUFFICIENCY OF THE EVIDENCE

Holmes asserts in his second point that the court erred in denying his motion for an instructed verdict. The motion urges among

---

**8.** The Court of Criminal Appeals remanded the cause to the Dallas Court to consider other authorities not addressed by the lower court in its opinion. *See State v. Mayorga,* 901 S.W.2d 943, 946 (Tex.Crim.App.1995). Nevertheless, the

Court "agree[d] with the court of appeals, and conclude[d] the trial court erred in applying the federal exclusionary rule and art. 38.23 to the facts of th[e] case." *Id.*

other grounds that the evidence is insufficient to prove Holmes's guilt as charged.

■ We treat a motion for an instructed verdict as a challenge to the legal sufficiency of the evidence. *Cook v. State*, 858 S.W.2d 467, 470 (Tex.Crim.App.1993); *Caldwell v. State*, 943 S.W.2d 551, 552 (Tex.App.—Waco 1997, no pet.). We view the evidence in the light most favorable to the prosecution and consider whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Scott v. State*, 905 S.W.2d 783, 784–85 (Tex. App.—Waco 1995, pet. ref'd).

Holmes specifically argues in the second point that the allegations of the information necessarily refer to his "original" possession of marihuana in his car (which cannot be prosecuted due to the unlawful arrest and search) rather than his subsequent act of retaking possession of the contraband and swallowing it. The State responds that it proved the offense alleged beyond a reasonable doubt.

The Court of Criminal Appeals rejected an argument similar to Holmes's in *Sledge v. State*, 953 S.W.2d 253 (Tex.Crim.App.1997). In *Sledge*, the State indicted the accused for aggravated sexual assault and indecency with a child. Sledge requested notice of any extraneous offenses the State intended to introduce at trial. In response, the State provided a listing of "several instances of sexual abuse." *Id.* at 254. Sledge asked the State to elect the incidents for which it would seek conviction. The State elected to seek prosecution on two instances which had occurred between one and two years before the date alleged in the indictment.[9] The trial court granted Sledge's motion for continuance in order to allow him time to prepare his defense to the designated offenses.

The Court granted Sledge's petition for discretionary review to resolve "his claim that the trial court convicted him of conduct that did not appear in the indictment." *Id.* The Court observed that no evidence appeared in the record demonstrating "that the testimony presented to the grand jury relat-

ed to offenses other than those proven at trial." *Id.* at 256. Conversely in Holmes's case, the fact that the State filed the misdemeanor charge before the forfeiture court's ruling on the suppression motion suggests that the State intended to prosecute Holmes for his "original" possession of marihuana when it filed the information.

■ However, we cannot say with any certainty that the State harbored this intent when it filed the information. The State could have just as easily intended to prosecute Holmes for his conduct in retaking possession of the marihuana in Keffer's car. When the record contains no affirmative evidence making one possibility more likely than the other, we will not presume error based on conflicting reasonable inferences, nor will we second-guess the basis of the State's information.

■ The allegations of the information permitted the State to proceed on either Holmes's original possession of marihuana or his subsequent "repossession" on the same date. As a result, Holmes was entitled, upon request, to require the State to elect the charge on which it intended to proceed at trial. *See Hill v. State*, 544 S.W.2d 411, 413–14 (Tex.Crim.App.1976); *Marshall v. State*, 432 S.W.2d 918, 919 (Tex.Crim.App.1968); *King v. State*, 732 S.W.2d 796, 804–06 (Tex. App.—Fort Worth 1987, pet. ref'd). The State essentially made its election during the hearing in misdemeanor court on Holmes's special plea and his motion to suppress.

■ When the State informed Holmes of its intent to proceed on a "repossession" theory two days before trial, Holmes neither alleged surprise nor asked for a continuance to respond to what he now characterizes as a "newly created" charge. *Cf. Sledge*, 953 S.W.2d at 255. For these reasons, we conclude that the court committed no error in allowing the State to proceed on the "repossession" charge.

■ The record contains sufficient evidence from which a rational juror could have found the essential elements of the offense

9. The Sledge indictment alleged that the offenses had occurred "on or about" a certain date.

*Sledge v. State*, 953 S.W.2d 253, 254 (Tex.Crim. App.1997).

alleged beyond a reasonable doubt. *Scott,* 905 S.W.2d at 784–85. Because the evidence suffices to support the conviction, the court did not err in denying Holmes's motion for an instructed verdict. Accordingly, we overrule Holmes's second point.

## THE SEARCH OF HOLMES'S MOUTH

Holmes contends in his third point that the court erred in admitting evidence obtained as a result of what Holmes argues was an illegal search of his mouth. The State responds that Keffer had probable cause to arrest Holmes at the time he directed him to open his mouth, and for that reason, Keffer had the right to intervene to preserve the evidence, if he could.

■ To justify a warrantless search, the State must demonstrate that probable cause existed at the time to support the search and that exigent circumstances made the procuring of a search warrant impractical. *McNairy v. State,* 835 S.W.2d 101, 106 (Tex. Crim.App.1991). "Probable cause to search exists when reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead a man of reasonable prudence to believe that the instrumentality of a crime or evidence of a crime will be found." *Id.*

■ In Holmes's case, the facts and circumstances known to Keffer included: (1) he had placed the marihuana cigarettes on the front seat of his patrol car; (2) Holmes sat alone in the patrol car, on the front seat with the marihuana; (3) less than a minute later, Keffer returned to find the marihuana had disappeared; (4) the bracket for the radio microphone in the center of the patrol car was bent downward; (5) Holmes's hat had fallen in the floor of the patrol car toward the center of the car and underneath the radio microphone bracket; and (6) Keffer searched the area around the front seat and could not find the marihuana cigarettes.

Keffer could have reasonably inferred from these facts that Holmes had retaken possession of the marihuana cigarettes. Because Holmes's hands were cuffed behind his back, Keffer could also reasonably infer that Holmes had taken possession of the ciga-

rettes with his mouth. Thus, we conclude that probable cause existed at the time Keffer asked Holmes to open his mouth. *Id.*

■ Having found the existence of probable cause, we must next decide whether exigent circumstances existed to justify a warrantless search. Preventing the destruction or removal of evidence is an exigent circumstance sufficient to support a warrantless search. *See id.* at 107; *Wooten v. State,* 623 S.W.2d 357, 358–59 (Tex.Crim.App. [Panel Op.] 1981); *Covarrubia v. State,* 902 S.W.2d 549, 554 (Tex.App.—Houston [1st Dist.] 1995, pet. ref'd).

■ From the above facts, Keffer had good reason to believe that Holmes was in the process of destroying the marihuana. This constitutes an exigent circumstance justifying Keffer's warrantless search of Holmes's mouth. Accordingly, the court did not err in admitting the evidence of what Keffer saw when Holmes opened his mouth. We overrule Holmes's third point.

## EXTRANEOUS OFFENSES

Holmes claims in his seventh point that the court erred in admitting evidence of extraneous offenses in evidence. The State responds that the evidence admitted was "same transaction contextual evidence."

Repeatedly throughout the testimony, Keffer and the two other officers testified that they were engaged in "other duties" at the time of Holmes's arrest. The testimony was vague but perhaps invited some speculation by the jurors as to what those other duties were. Holmes argues that the testimony implied his commission of extraneous offenses. The following is representative of the questions and answers making these allusions:

Q: Did you go back and do some more work at the scene of the incident?

. . . .

Q: And did you go take care of some more of your duties there?

. . . .

Q: Now, was your attention on other things?

. . . .

Q: And did you see Officer Keffer leave the joints in the front seat and go take care of some business?

. . . .

Q: Were you attending to other duties while Mr. Holmes was being placed in the vehicle?

. . . .

Q: And during the entire incident would you say that your focus was on other things, not Mr. Holmes?

. . . .

Q: Did you see Officer Keffer place the marijuana in the police car?

A: I didn't actually see him place it in there, but I did see it in the vehicle.

Q: You did see it in the vehicle?

A: Yes. When I had walked by, he had some other stuff that he sat up there as well.

. . . .

Q: Do you recall at what point—I know your focus was on other things, but do you recall at what point you saw the marijuana in the car if Officer Keffer wasn't there?

. . . .

Q: [Did Officer Keffer show the marihuana cigarettes to you] while he's walking to his car?

A: I don't—he wasn't walking. I was walking around doing some other stuff and he said—you know, he showed them to me.

One of the assisting officers directly commented on the fact that his testimony was limited when he testified, "I don't know if I can testify on the stand as to what actually was happening at the time because we've been restricted."

■ In order to constitute an improper reference to an extraneous offense, "the evidence must show a crime or bad act, and that the defendant was connected to it." *Lockhart v. State*, 847 S.W.2d 568, 573 (Tex. Crim.App.1992). Testimony which merely refers to or implies an extraneous offense can be rendered harmless by a prompt instruction to disregard. *Kemp v. State*, 846 S.W.2d 289, 308 (Tex.Crim.App.1992); *La-*

*chapelle v. State*, 579 S.W.2d 1, 2 (Tex.Crim. App.1979).

Sometimes, evidence of an extraneous offense is admitted because the extraneous offense is inextricably intertwined with the offense charged. *Mayes v. State*, 816 S.W.2d 79, 86 n. 4 (Tex.Crim.App.1991); *Yates v. State*, 941 S.W.2d 357, 365 (Tex.App.—Waco 1997, pet. ref'd).

Such evidence imparts to the trier of fact information essential to understanding the context and circumstances of events which, although legally separate offenses, are blended or interwoven. As such, it is admissible, not for the purpose of showing character conformity, but to illuminate the nature of the crime alleged.

*Camacho v. State*, 864 S.W.2d 524, 532 (Tex. Crim.App.1993) (citation omitted).

■ The State suggests that the evidence in question was properly admitted under this rationale. We disagree. The other evidence surrounding Holmes's arrest is inadmissible because of the unlawful detention and search. *See* Tex.Code Crim. Proc. Ann. art. 38.23. The same transaction contextual evidence theory of admissibility does not trump the exclusionary rule.

■ However, with the exception of the testimony that the witnesses had been restricted, we do not believe the other comments show a crime or bad act or that Holmes was connected to any crime or bad act. *See Lockhart*, 847 S.W.2d at 573. Thus, the court did not err in allowing this testimony.

■ The remaining comment concerning the court's restriction of the subject-matter of the witnesses' testimony more closely approaches inappropriate testimony suggesting or implying an extraneous offense. The Court of Criminal Appeals considered a similar situation in *Lachapelle*. In that case, an officer was relating to the jury a citizen's description of a burglary suspect in the following manner:

To reiterate, we were notified by a citizen that had heard some unusual noises on two occasions, and looking out his window he observed a person pushing a grocery cart

up Northwest 3rd Avenue. He advised that the persons looked like they possibly were intoxicated by the way they were weaving and pushing the baskets and they were extremely loud. I don't know quite exactly how to explain this without going into the other case because we have got a. . . .

*Lachapelle,* 579 S.W.2d at 1. The trial court promptly instructed the jury to disregard the reference to another case. The Court concluded that the trial court's instruction cured any harm arising from the witness's suggestion that the defendant had committed another offense. *Id.* at 1–2.

Holmes's case is different from *Lachapelle,* however, because the trial court overruled Holmes's objection to the testimony. Thus, we conclude that the trial court erred when it overruled Holmes's objection to this testimony.

Having found error, we must assess the harm which Holmes sustained as a result of the admission of this improper testimony. Rule 44.2 of the appellate rules governs how harm is assessed after error is found in criminal cases. TEX.R.APP. P. 44.2. Subsection (b) provides: "Any [non-constitutional] error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." *Id.* 44.2(b).

■ When we assess harm under Rule 44.2(b), we review the entire record to determine whether "the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997) (citing *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)). If we conclude that the error did not have such an effect or influence, then we must disregard the error. TEX.R.APP. P. 44.2(b).

■ The evidence in question gave rise to an implication that something else was happening at the scene of Holmes's arrest which the court did not want the jury to know about. However, the implication was vague at best. The testimony did not suggest a specific extraneous crime or bad act, nor did it directly implicate Holmes as being involved in some crime other than the offense for which he was on trial. Because the implication was so vague, we conclude that the influence the testimony had was not "substantial or injurious." *King,* 953 S.W.2d at 273. Thus, the error was harmless. We overrule Holmes's seventh point.

## THE JURY CHARGE

Holmes's fourth, fifth, sixth, and eighth points respectively aver that the court erred in refusing to submit the following instructions and definitions in the charge:

- an article 38.23 instruction;
- an instruction regarding the offense of tampering with evidence;
- a definition for the term "usable quantity"; and
- an instruction not to speculate on evidence suggesting extraneous offenses.

■ A properly framed jury charge informs the jury of the law applicable to the case and guides the jurors in applying the law to the evidence presented at trial. *Hutch v. State,* 922 S.W.2d 166, 170 (Tex. Crim.App.1996). Accordingly, we decide whether the law applicable to Holmes's case and the evidence presented at his trial required the court to submit the instructions and definitions requested.

### ARTICLE 38.23

■ Article 38.23 requires a trial court to submit an instruction to the jury allowing it to disregard any evidence unlawfully obtained, if a fact issue exists concerning the legality of the seizure. TEX.CODE CRIM. PROC. ANN. art. 38.23(a). However, if the underlying facts are undisputed, no fact issue exists, and an instruction is not required. *Bell v. State,* 938 S.W.2d 35, 48 (Tex.Crim.App. 1996), *cert. denied,* —— U.S. ——, 118 S.Ct. 90, 139 L.Ed.2d 46 (1997).

■ In Holmes's case, no dispute exists concerning the facts surrounding Holmes's actions in retaking possession of the marihuana cigarettes and eating them. Thus, the trial court properly denied his request for an article 38.23 instruction. We overrule his fourth point.

## TAMPERING WITH EVIDENCE

Holmes suggests that an instruction on tampering with evidence was appropriate because Keffer testified that the grand jury had no-billed him on this charge and that the charge for which Holmes was on trial was based on the same evidence considered by the grand jury when it reviewed the tampering charge. Holmes also cites numerous instances in his argument and the State's closing argument where the tampering allegation was addressed.

■■■ The State correctly responds that the arguments of counsel are not a basis on which to decide whether an instruction should have been given. Rather, the court's charge must guide the jury in applying the applicable law to the evidence presented. *Hutch,* 922 S.W.2d at 170. The applicable law is determined from the charging instrument. *See Abdnor v. State,* 871 S.W.2d 726, 731 (Tex.Crim.App.1994); *Johnson v. State,* 571 S.W.2d 170, 173 (Tex.Crim.App. [Panel Op.] 1978); *see also Jackson v. State,* 463 S.W.2d 182, 185 (Tex.Crim.App.1970) (fact that evidence shows commission of more than one offense does not require submission of offense other than the one charged).

■■ The State's information charged Holmes with possession of marihuana. The charge instructed the jury on the law applicable to this offense. Accordingly, the court did not err in denying Holmes's requested instruction on tampering with evidence. We overrule his fifth point.

## DEFINITION OF USABLE QUANTITY

■■■ When a term is not defined by statute, the court must provide a definition for the term only if the term does not have "a common and ordinary meaning that jurors can be fairly presumed to know and apply." *Spector v. State,* 746 S.W.2d 946, 949 (Tex. App.—Austin 1988, pet. ref'd) (quoting *Phillips v. State,* 597 S.W.2d 929, 937 (Tex.Crim. App. [Panel Op.] 1980)). The term "usable quantity" has such a common and ordinary meaning. *Id.* Thus, the court did not err in denying Holmes's requested definition for

this term. Accordingly, we overrule his sixth point.

## SPECULATION ON EXTRANEOUS OFFENSES

■■ We have previously detailed a representative selection of the testimony which Holmes contends improperly alluded to his commission of extraneous offenses. With regard to this evidence, he submitted a written request for the following instruction:

You are instructed in this case that if there is any evidence before you that the Defendant was in police custody before the alleged illegal act occurred, if any did so occur, you may not consider nor speculate as to the reason for being in police custody, if he was, in your deliberations concerning this case on trial.

The trial court denied this request.

We have already determined that only one statement from the testimony complained of constituted an improper allusion to an extraneous offense. The trial court should have sustained Holmes's objection to this portion of the testimony and instructed the jury to disregard it. Although it was error, we also determined that the error was harmless because of the vague nature of the testimony. Because the admission of the testimony did not harm Holmes, the court properly denied the requested instruction. Thus, we overrule Holmes's eighth point.

## THE STATE'S CLOSING ARGUMENT

In Holmes's ninth point, he argues that the court erred in overruling various objections he made to the State's closing argument. His tenth point alleges that counsel was ineffective for failing to object to other portions of the State's argument.[10]

■■ The four areas of permissible jury argument are:
- summations of the evidence;
- reasonable deductions from the evidence;
- responses to opposing counsel's argument; and
- a plea for law enforcement.

*Lagrone v. State,* 942 S.W.2d 602, 619 (Tex. Crim.App.1997), *cert. denied,* — U.S. —,

10. Holmes's trial counsel also represents him on appeal.

118 S.Ct. 305, 139 L.Ed.2d 235 (1997). "Counsel has wide latitude in drawing inferences from the evidence that are reasonable, fair, legitimate and made in good faith." *Sterling v. State*, 830 S.W.2d 114, 120 (Tex. Crim.App.1992).

In Holmes's argument at trial, counsel attacked the sufficiency of the evidence to prove beyond a reasonable doubt that the substance Holmes had allegedly swallowed constituted a usable quantity of marihuana. Counsel chided the State for failing to obtain a blood or urine test to confirm the officers' beliefs that the substance was in fact marihuana. Counsel also urged the jury not to convict Holmes of an offense for which the grand jury had essentially found insufficient evidence to warrant prosecution when it nobilled Holmes for tampering with evidence.

 The State responded in the following manner:

> And do you think that I can make him throw up so that we can look for marijuana in his stomach? Do you think I can make him do a urine sample? Well, you can't. And [Holmes's counsel] knows that, too.
>
> . . . .
>
> And, finally, tampering with evidence. Folks, if we couldn't bring this case to you, it was wrong of us to bring this case to you, you wouldn't have the law. If there was a legal impediment to our bringing this possession of marijuana case before you, Judge Barry would not have let us give it to you.
>
> [The court sustained Holmes's objection "on other grounds" and instructed the jury to disregard the prosecutor's "last statement."]
>
> . . . .
>
> Now, you don't know what tampering with evidence—what the elements of tampering with evidence is. It's a felony. I'm a misdemeanor attorney. I don't know what goes on in Grand Jury. That's secret. But there are so many reasons besides that they didn't believe the evidence.
>
> ["same objection" overruled]
>
> That something may have been no billed. Maybe it doesn't meet the elements of a tampering with evidence charge. There's

different elements to every offense. Maybe it doesn't meet the elements. There are so many different things.

> But I submit to you that's neither here nor there. It's not. It's not important here. What's important is based on the law that you have and the facts that you've heard, did Michael Holmes possess marijuana? He sure did. And because he did, I'm asking you to find him guilty. Thank you.

The majority of the State's argument is a proper response to the argument of Holmes's counsel. The State's suggestion that it could not obtain a urine specimen is improper, however. *See Macias v. State*, 649 S.W.2d 150, 151–52 (Tex.App.—El Paso 1983, no pet.); TEX.CODE CRIM. PROC. ANN. art. 18.02(10) (Vernon Supp.1998). It arguably introduced a new (albeit false) fact into evidence regarding the State's ability to obtain urine specimens. *See Lagrone*, 942 S.W.2d at 619. The argument also constituted an improper striking of Holmes over the shoulders of his counsel. *Dinkins v. State*, 894 S.W.2d 330, 357 (Tex.Crim.App.1995).

Nonetheless, the State did not repeat this improper argument, and it offered overwhelming evidence establishing Holmes's guilt. Because the argument was not repeated and because of the overwhelming evidence, we conclude that neither Holmes's substantial rights nor the jury's verdict of guilt were affected by the argument. *See Lagrone*, 942 S.W.2d at 619–20; *Dinkins*, 894 S.W.2d at 357. Thus, the improper argument was harmless. TEX.R.APP. P. 44.2(b). For these reasons, we overrule Holmes's ninth point.

Holmes's tenth point asserts that counsel was ineffective for failing to object to the following argument by the State which Holmes claims constituted impermissible comment on his post-arrest silence:

> You know, members of the jury, you really can't blame him. You really can't blame Mr. Holmes. I mean, he's sitting there in the police car, he's handcuffed, and the officer puts the marijuana next to him. I mean, he did what any good criminal is going to do; he ate it.

But even though you can't blame him for his actions, I mean, it seems reasonable that's what a criminal is going to do; he's going to eat that evidence that's right next to him. He is guilty of this offense. He's guilty of possession of marijuana.

. . . .

And it talks here about possession on Page Two [of the charge]. It says possession means actual care, custody, control or management of the property. If eating it is not care, custody, control or management of the property, I don't know what is. I mean it's not like he was in his car and he can't say that, you know, he didn't know it was in his care, custody or control.

. . . .

It's marijuana, folks. There's no doubt about it. And, you know, all three officers told you it was marijuana, but did you know who else told you it was marijuana? He did. If it wasn't marijuana, why would he have eaten it? If it's a tobacco cigarette, why would he lean over and eat it? Because it's marijuana and he didn't want to be caught with it.

And he knew it was going to be used against him; and so what he did was eat it. . . .

. . . .

Keffer leaves the marijuana there, comes back. The defendant's hat is on the ground. The PA system is messed up. He's been moving around. There's evidence of that. He looks up at him; he's grinning. Asked him where that marijuana is and he said—Holmes won't say anything; he's just smiling at him. He knows where it is. It's in his teeth. So he goes around—

■ The State violates the rights of an accused under the Fifth Amendment to the United States Constitution and Article I, Section 10 of the Texas Constitution if it comments on his post-arrest silence. *Doyle v. Ohio*, 426 U.S. 610, 617–18, 96 S.Ct. 2240, 2244–45, 49 L.Ed.2d 91 (1976); *Dinkins*, 894 S.W.2d at 356; *Nixon v. State*, 940 S.W.2d 687, 692 (Tex.App.—El Paso 1996, pet. ref'd). However, an accused's nontestimonial post-arrest conduct is not protected by these constitutional provisions. *See Turpin v. State*,

606 S.W.2d 907, 913–14 (Tex.Crim.App.1980); *Vester v. State*, 916 S.W.2d 708, 712 (Tex. App.—Texarkana 1996, no pet.); *Ewerokeh v. State*, 835 S.W.2d 796, 797 (Tex.App.—Austin 1992, pet. ref'd).

■ The State's argument referencing the fact that Holmes swallowed the marihuana commented on Holmes's nontestimonial actions. Thus, the State's argument did not comment on Holmes's post-arrest silence. Moreover, the argument constituted nothing more than a summation of the evidence and reasonable inferences from the evidence. Thus, Holmes's counsel did not err in failing to object to the argument. *See Jones v. State*, 950 S.W.2d 386, 389 (Tex.App.—Fort Worth 1997, pet. ref'd, untimely filed); *Ryan v. State*, 937 S.W.2d 93, 102 (Tex.App.—Beaumont 1996, pet. ref'd). For these reasons, we overrule Holmes's tenth point.

We affirm the judgment.