02-11-038-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00038-CR


 
 
 Taureaus Alvaro Maxwell
 
 
  
 
 
 APPELLANT
 
 
 
 
 V.
  
 
 
 
 
 The
 State of Texas
 
 
  
 
 
 STATE
 
 


----------

FROM THE 213th
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

Introduction

Appellant
Taureaus Alvaro Maxwell appeals his conviction for sexual assault of a child,
claiming in a single point that the trial court erred by overruling his
objection to the prosecutor’s improper jury argument.  We affirm.

 

 

Background
Facts and Procedural History

Appellant
and S.R.’s mother, “Kathy” (a pseudonym) had an on-again-off-again, dating and cohabitation
relationship for about twenty years.  Appellant acknowledged that S.R. was not
one of his biological children,[2] but he considered her his
daughter.

On
April 20, 2008, Appellant, Kathy, and S.R. were living in Kathy’s apartment in
Grapevine.  Appellant had been unemployed since 2007, Kathy was a director of a
child-care center, and S.R. was sixteen and in high school.

After
everyone had gone to bed that night, S.R. woke to a loud tapping on her bedroom
window.  Afraid that someone might be trying to come in through her window, she
went to her mother’s bedroom, where Kathy and Appellant were sleeping, and
tried to wake them.  She testified that only Appellant woke up and that he went
with her back to her bedroom to make sure that no one was at her window.  She
further testified that first he looked out the window from inside her room and that
he then went outside to check as well.  Even though he assured her that no one
was there and that she could go back to bed, she was still unsettled.  As she
lay back down, Appellant asked if she wanted him to stay, and she replied that
she did.  She testified that she felt that he could protect her if something
happened.

Although
S.R. conceded the possibility that early on in the investigation she may have
told investigators that Appellant had lain on the bed before she did, at trial
she was certain that she had lain down first.  She testified that at first he was
on top of the covers but that at some point he got under them behind her as she
lay on her side facing the window.  Appellant started rubbing her back on top
of her t-shirt, progressed to rubbing her bottom, and eventually put his hand
inside her underwear and penetrated her vagina with his finger.  She testified
that he moved his finger in an “in-and-out motion” for one to two minutes
before getting up and leaving her room without saying anything.

S.R.
testified that she was upset and angry with Appellant the day after and avoided
him while trying to decide whether to tell her mother what he had done.  She
also testified that the next night she sensed someone in her room while she
slept.  When she awoke, she was alarmed to see Appellant standing in her
doorway looking at her.  As he had the night before, he left without saying
anything.

The
next day, Appellant was gone from the apartment when S.R. awoke.  That night
she told her mother everything that had happened.  Kathy became upset, took a
phone outside, and the police arrived shortly thereafter.

Appellant’s
testimony differed from S.R.’s on what happened during the two nights and on a
motive for the charges against him.  He agreed that S.R. had come to her
mother’s bedroom because she had been frightened by a noise at her window.  He
also agreed that he had gone to her bedroom and had stayed there after assuring
her that no one was outside her window.  He denied, however, that he ever got
in or even on the bed with her but that he had tried to “camouflage” himself by
kneeling next to it in case anyone returned to tap on the window.  He further
denied inserting his finger into her private parts and returning to her room
the next night to watch her from the doorway.

He
testified that Kathy wanted him to marry her and that she had threatened him if
he did not do so.  Although he described a loving father-daughter relationship
with S.R., he also testified that Kathy had contrived false allegations against
him and had coached S.R. into making them.

The
jury found Appellant guilty of sexual assault of a child as alleged in the
indictment and assessed punishment at twelve years’ confinement and a $6000
fine.  The trial court sentenced Appellant accordingly.

Jury
Argument

In
his sole point on appeal, Appellant contends that the trial court erred by
overruling his objection that the following remark the prosecutor made during
closing argument in the guilt-innocence phase asked the jury to speculate by
putting itself in the position of the victim:  “Imagine being [S.R.].  This is
somebody she’s loved, who’s been in her life for 16 years . . . . Imagine how
she was feeling.”

The
realm of proper jury argument is home to the following four categories:  (1)
answers to the argument of opposing counsel; (2) summations of the evidence
presented at trial; (3) reasonable deductions drawn from the evidence; and (4)
pleas for law enforcement.  Wesbrook v. State, 29 S.W.3d 103, 115 (Tex.
Crim. App. 2000), cert. denied, 532 U.S. 944 (2001); McCabe v. State,
No. 02-08-00331-CR, 2009 WL 3823203, at *4 (Tex. App.––Fort Worth Nov. 12, 2009,
no pet.) (mem. op., not designated for publication).  To determine whether a
party’s argument properly resides in one of these categories, we must consider
the argument in light of the record as a whole and in the context in which it
is made.  Gaddis v. State, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988).

Before
the prosecutor made the remark to which Appellant takes issue, defense counsel
had asked the jury during Appellant’s closing argument, “If you were a kid,
wouldn’t you remember––if you were a young girl––wouldn’t you remember whether
you got in bed with a great big man or whether he got into bed with you?  Think
about that.  Wouldn’t you remember that?”

Counsel
argued to the jury that the details in S.R.’s story had changed because her
mother had concocted the story to get back at Appellant for not wanting to
marry her.  In advancing his argument, he asked the jurors to put themselves in
S.R.’s position and speculate about what they might do––what they might
remember.  Appellant’s trial counsel did exactly what Appellant now complains
of the prosecutor doing during jury argument.

We
must place the State’s argument in context and cannot simply consider isolated
portions that are removed from their context.  See Gaddis, 753 S.W.2d at
398.  The record shows the following:

          MS.
WHELCHEL [for the State]:  Imagine being [S.R.].  This is somebody she’s loved,
who’s been in her life for 16 years.  She didn’t want him to go.  What does he
do?  He touches her in a sexual way.  Imagine how she was feeling.

 

          MR.
MCCARTHY [for Appellant]:  Your Honor, I’m going to object.  She’s asking them
to speculate by putting themselves in the position of the––of the victim.

 

          THE COURT: 
Overruled.

 

          MS.
WHELCHEL:  You heard from her.  How were you feeling?  She didn’t know what to
do.  She was shocked.  She was confused.  She had thought about it for two
days.  What really prompted her to tell is when he was staring at her in the
doorway.  That scared her because you know what was going through her mind. 
What is he going to do next?

 

To
determine whether the State’s argument was proper, we must consider it in light
of the whole record.  See id.  Appellant’s position at trial and on
appeal was and is that S.R. testified as she did because her mother had coached
her.  In his argument, defense counsel asked the jurors to put themselves in
the place of a child and speculate about what they would have remembered about
the events that had been alleged.  By asking the jurors to step inside the
shoes of the child complainant and to speculate about what they would remember,
counsel invited the State to respond in similar fashion but from the point of
view of a child that had been abused by someone she had loved.  The fair import
of the prosecutor’s remarks was that the abuse by a loved one had caused S.R.
to feel frightened, hurt, and confused.  From this argument, the jury could
reasonably infer that such an experience might affect how the child would
remember things.  We hold that when viewed in context of the full record and
argument of opposing counsel, the prosecutor’s remarks were invited and
supported by the record.  See Rodriguez v. State, 520 S.W.2d 778, 779–80
(Tex. Crim. App. 1975).

Even
if the prosecutor’s remarks in this case find no shelter within the bounds of proper
jury argument, to warrant reversal, the remarks must be manifestly improper,
violate some mandatory statute, or inject some new harmful fact into the case. 
Mathews v. State, 635 S.W.2d 532, 539 (Tex. Crim. App. [Panel Op.]
1982); Chandler v. State, 689 S.W.2d 332, 334 (Tex. App.––Fort Worth 1985,
pet. ref’d).  The prosecutor’s remarks do not violate some mandatory statute or
inject new and harmful facts into the case, and Appellant has not contended
that they do.  The question we must decide, then, is whether they were
manifestly improper.

It
is improper for a prosecutor to invite jurors into a victim’s shoes.  Chandler,
689 S.W.2d at 334.  And in Brandley v. State, the court of criminal
appeals held that the prosecutor’s argument, “it is fair for you to think about
how you would feel if you lost your children . . .” was improper because it
asked the jurors to abandon their objectivity.  691 S.W.2d 699, 712 (Tex. Crim.
App. 1985).  The trial court had sustained Brandley’s objection to the
preceding remark and had instructed the jury to disregard it, and Brandley’s
conviction was affirmed on appeal.  Id. at 712–13.  Appellant argues
that Brandley compels reversal in his case because Appellant’s objection
in the trial court was overruled.  We disagree.

In Brandley,
the court of criminal appeals wrote, “Given the record as a whole and given the
timely instruction to disregard, we find that the argument is not of the tenor
to require reversal.  Similar cases have found such argument to be harmless. 
[citations omitted].”  Id. at 713.  We find nothing in Brandley
that compels reversal in this case simply because the trial court overruled
Appellant’s objection.

Further,
if a jury argument exceeds the bounds of proper argument, a trial court’s
erroneous overruling of a defendant’s objection is not reversible error unless
it affected the appellant’s substantial rights.  Tex. R. App. P. 44.2(b); Martinez
v. State, 17 S.W.3d 677, 692–93 (Tex. Crim. App. 2000); Mosley v. State,
983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh’g), cert. denied,
526 U.S. 1070 (1999).  In determining whether the appellant’s substantial
rights were affected, we consider (1) the severity of the misconduct
(i.e., the prejudicial effect of the prosecutor’s remarks); (2) curative
measures; and (3) the certainty of conviction absent the misconduct. 
Martinez, 17 S.W.3d at 692–93; Mosley, 983 S.W.2d at 259.

Appellant
has not cited any authority reversing a conviction solely for one brief,
isolated remark such as the one at issue here.  Cf. Rudd v. State, 921
S.W.2d 370, 372 (Tex. App.––Texarkana 1996, pet. ref’d) (stating that improper
comment made briefly and only once was unlikely to have had any effect on
jury); Holmes v. State, 962 S.W.2d 663, 675 (Tex. App.––Waco 1998, pet.
ref’d, untimely filed) (holding harmless improper jury argument when State did
not repeat it, and offered overwhelming evidence of defendant’s guilt).

S.R.’s
testimony established all elements of the offense for which Appellant stood
charged, and the complained-of remark did not alter that to any degree to his
detriment.        Therefore, because even if we were to assume that the State’s
argument was objectionable and we were to analyze it under the Martinez
factors, we would conclude that it did not affect Appellant’s substantial rights
because it caused no substantial and injurious effect or influence on the
verdict.  Tex. R. App. P. 44.2(b); see Martinez, 17 S.W.3d at 692–93;
King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing Kotteakos
v. United States, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946).  Accordingly,
we overrule his sole point.

Conclusion

Having
overruled Appellant’s sole point on appeal, we affirm the judgment.

 

LEE GABRIEL
JUSTICE

 

PANEL:  MCCOY,
MEIER, and GABRIEL, JJ.

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:   July 12, 2012









[1]See Tex. R. App. P. 47.4.





[2]He had seven––ranging in
age from eighteen months to twenty-two years––each from a different mother.