

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00038-CR

TAUREAUS ALVARO MAXWELL                                    APPELLANT

V.

THE STATE OF TEXAS                                              STATE

----------

FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### Introduction

Appellant Taureaus Alvaro Maxwell appeals his conviction for sexual assault of a child, claiming in a single point that the trial court erred by overruling his objection to the prosecutor's improper jury argument. We affirm.

---

[1]See Tex. R. App. P. 47.4.

**Background Facts and Procedural History**

Appellant and S.R.'s mother, "Kathy" (a pseudonym) had an on-again-off-again, dating and cohabitation relationship for about twenty years. Appellant acknowledged that S.R. was not one of his biological children,[2] but he considered her his daughter.

On April 20, 2008, Appellant, Kathy, and S.R. were living in Kathy's apartment in Grapevine. Appellant had been unemployed since 2007, Kathy was a director of a child-care center, and S.R. was sixteen and in high school.

After everyone had gone to bed that night, S.R. woke to a loud tapping on her bedroom window. Afraid that someone might be trying to come in through her window, she went to her mother's bedroom, where Kathy and Appellant were sleeping, and tried to wake them. She testified that only Appellant woke up and that he went with her back to her bedroom to make sure that no one was at her window. She further testified that first he looked out the window from inside her room and that he then went outside to check as well. Even though he assured her that no one was there and that she could go back to bed, she was still unsettled. As she lay back down, Appellant asked if she wanted him to stay, and she replied that she did. She testified that she felt that he could protect her if something happened.

---

[2]He had seven—ranging in age from eighteen months to twenty-two years—each from a different mother.

Although S.R. conceded the possibility that early on in the investigation she may have told investigators that Appellant had lain on the bed before she did, at trial she was certain that she had lain down first. She testified that at first he was on top of the covers but that at some point he got under them behind her as she lay on her side facing the window. Appellant started rubbing her back on top of her t-shirt, progressed to rubbing her bottom, and eventually put his hand inside her underwear and penetrated her vagina with his finger. She testified that he moved his finger in an "in-and-out motion" for one to two minutes before getting up and leaving her room without saying anything.

S.R. testified that she was upset and angry with Appellant the day after and avoided him while trying to decide whether to tell her mother what he had done. She also testified that the next night she sensed someone in her room while she slept. When she awoke, she was alarmed to see Appellant standing in her doorway looking at her. As he had the night before, he left without saying anything.

The next day, Appellant was gone from the apartment when S.R. awoke. That night she told her mother everything that had happened. Kathy became upset, took a phone outside, and the police arrived shortly thereafter.

Appellant's testimony differed from S.R.'s on what happened during the two nights and on a motive for the charges against him. He agreed that S.R. had come to her mother's bedroom because she had been frightened by a noise at her window. He also agreed that he had gone to her bedroom and had stayed

3

there after assuring her that no one was outside her window. He denied, however, that he ever got in or even on the bed with her but that he had tried to "camouflage" himself by kneeling next to it in case anyone returned to tap on the window. He further denied inserting his finger into her private parts and returning to her room the next night to watch her from the doorway.

He testified that Kathy wanted him to marry her and that she had threatened him if he did not do so. Although he described a loving father-daughter relationship with S.R., he also testified that Kathy had contrived false allegations against him and had coached S.R. into making them.

The jury found Appellant guilty of sexual assault of a child as alleged in the indictment and assessed punishment at twelve years' confinement and a $6000 fine. The trial court sentenced Appellant accordingly.

### Jury Argument

In his sole point on appeal, Appellant contends that the trial court erred by overruling his objection that the following remark the prosecutor made during closing argument in the guilt-innocence phase asked the jury to speculate by putting itself in the position of the victim: "Imagine being [S.R.]. This is somebody she's loved, who's been in her life for 16 years . . . . Imagine how she was feeling."

The realm of proper jury argument is home to the following four categories: (1) answers to the argument of opposing counsel; (2) summations of the evidence presented at trial; (3) reasonable deductions drawn from the evidence;

4

and (4) pleas for law enforcement. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000), *cert. denied*, 532 U.S. 944 (2001); *McCabe v. State*, No. 02-08-00331-CR, 2009 WL 3823203, at *4 (Tex. App.—Fort Worth Nov. 12, 2009, no pet.) (mem. op., not designated for publication). To determine whether a party's argument properly resides in one of these categories, we must consider the argument in light of the record as a whole and in the context in which it is made. *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988).

Before the prosecutor made the remark to which Appellant takes issue, defense counsel had asked the jury during Appellant's closing argument, "If you were a kid, wouldn't you remember—if you were a young girl—wouldn't you remember whether you got in bed with a great big man or whether he got into bed with you? Think about that. Wouldn't you remember that?"

Counsel argued to the jury that the details in S.R.'s story had changed because her mother had concocted the story to get back at Appellant for not wanting to marry her. In advancing his argument, he asked the jurors to put themselves in S.R.'s position and speculate about what they might do—what they might remember. Appellant's trial counsel did exactly what Appellant now complains of the prosecutor doing during jury argument.

We must place the State's argument in context and cannot simply consider isolated portions that are removed from their context. *See Gaddis*, 753 S.W.2d at 398. The record shows the following:

MS. WHELCHEL [for the State]: Imagine being [S.R.]. This is somebody she's loved, who's been in her life for 16 years. She didn't want him to go. What does he do? He touches her in a sexual way. Imagine how she was feeling.

MR. MCCARTHY [for Appellant]: Your Honor, I'm going to object. She's asking them to speculate by putting themselves in the position of the—of the victim.

THE COURT: Overruled.

MS. WHELCHEL: You heard from her. How were you feeling? She didn't know what to do. She was shocked. She was confused. She had thought about it for two days. What really prompted her to tell is when he was staring at her in the doorway. That scared her because you know what was going through her mind. What is he going to do next?

To determine whether the State's argument was proper, we must consider it in light of the whole record. *See id.* Appellant's position at trial and on appeal was and is that S.R. testified as she did because her mother had coached her. In his argument, defense counsel asked the jurors to put themselves in the place of a child and speculate about what they would have remembered about the events that had been alleged. By asking the jurors to step inside the shoes of the child complainant and to speculate about what they would remember, counsel invited the State to respond in similar fashion but from the point of view of a child that had been abused by someone she had loved. The fair import of the prosecutor's remarks was that the abuse by a loved one had caused S.R. to feel frightened, hurt, and confused. From this argument, the jury could reasonably infer that such an experience might affect how the child would remember things. We hold that when viewed in context of the full record and

6

argument of opposing counsel, the prosecutor's remarks were invited and supported by the record. *See Rodriguez v. State*, 520 S.W.2d 778, 779–80 (Tex. Crim. App. 1975).

Even if the prosecutor's remarks in this case find no shelter within the bounds of proper jury argument, to warrant reversal, the remarks must be manifestly improper, violate some mandatory statute, or inject some new harmful fact into the case. *Mathews v. State*, 635 S.W.2d 532, 539 (Tex. Crim. App. [Panel Op.] 1982); *Chandler v. State*, 689 S.W.2d 332, 334 (Tex. App.—Fort Worth 1985, pet. ref'd). The prosecutor's remarks do not violate some mandatory statute or inject new and harmful facts into the case, and Appellant has not contended that they do. The question we must decide, then, is whether they were manifestly improper.

It is improper for a prosecutor to invite jurors into a victim's shoes. *Chandler*, 689 S.W.2d at 334. And in *Brandley v. State*, the court of criminal appeals held that the prosecutor's argument, "it is fair for you to think about how you would feel if you lost your children . . ." was improper because it asked the jurors to abandon their objectivity. 691 S.W.2d 699, 712 (Tex. Crim. App. 1985). The trial court had sustained Brandley's objection to the preceding remark and had instructed the jury to disregard it, and Brandley's conviction was affirmed on appeal. *Id*. at 712–13. Appellant argues that *Brandley* compels reversal in his case because Appellant's objection in the trial court was overruled. We disagree.

In *Brandley*, the court of criminal appeals wrote, "Given the record as a whole and given the timely instruction to disregard, we find that the argument is not of the tenor to require reversal. Similar cases have found such argument to be harmless. [citations omitted]." *Id.* at 713. We find nothing in *Brandley* that compels reversal in this case simply because the trial court overruled Appellant's objection.

Further, if a jury argument exceeds the bounds of proper argument, a trial court's erroneous overruling of a defendant's objection is not reversible error unless it affected the appellant's substantial rights. Tex. R. App. P. 44.2(b); *Martinez v. State*, 17 S.W.3d 677, 692–93 (Tex. Crim. App. 2000); *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999). In determining whether the appellant's substantial rights were affected, we consider (1) the severity of the misconduct (i.e., the prejudicial effect of the prosecutor's remarks); (2) curative measures; and (3) the certainty of conviction absent the misconduct. *Martinez*, 17 S.W.3d at 692–93; *Mosley*, 983 S.W.2d at 259.

Appellant has not cited any authority reversing a conviction solely for one brief, isolated remark such as the one at issue here. *Cf. Rudd v. State*, 921 S.W.2d 370, 372 (Tex. App.—Texarkana 1996, pet. ref'd) (stating that improper comment made briefly and only once was unlikely to have had any effect on jury); *Holmes v. State*, 962 S.W.2d 663, 675 (Tex. App.—Waco 1998, pet. ref'd,

8

untimely filed) (holding harmless improper jury argument when State did not repeat it, and offered overwhelming evidence of defendant's guilt).

S.R.'s testimony established all elements of the offense for which Appellant stood charged, and the complained-of remark did not alter that to any degree to his detriment. Therefore, because even if we were to assume that the State's argument was objectionable and we were to analyze it under the *Martinez* factors, we would conclude that it did not affect Appellant's substantial rights because it caused no substantial and injurious effect or influence on the verdict. Tex. R. App. P. 44.2(b); *see Martinez*, 17 S.W.3d at 692–93; *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946). Accordingly, we overrule his sole point.

## Conclusion

Having overruled Appellant's sole point on appeal, we affirm the judgment.

LEE GABRIEL
JUSTICE

PANEL: MCCOY, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: July 12, 2012