Opinion filed May 30, 2014



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00315-CR

_____

### THE STATE OF TEXAS, Appellant

### V.

### JOHN BERRY JACKSON, Appellee

**On Appeal from the 32nd District Court**

**Mitchell County, Texas**

**Trial Court Cause No. 7363**

### O P I N I O N

Appellee, John Berry Jackson, was charged with the offense of possession of methamphetamine, with intent to deliver, in an amount of four grams or more but less than 200 grams. Jackson filed a pretrial motion to suppress the evidence. He asserted that the police officers found the methamphetamine as the result of an illegal search of his car. The trial court granted Jackson's motion. The State has

filed this interlocutory appeal from the trial court's order. In two appellate issues, the State asserts that the trial court erred when it granted Jackson's motion to suppress. We affirm.

The evidence at the suppression hearing showed that Jackson was the subject of a narcotics investigation in Mitchell County in November 2011. Law enforcement officers believed that Jackson, who resided in Colorado City, was a methamphetamine dealer. On November 22, 2011, the officers worked with a confidential informant to set up a controlled buy of methamphetamine from Jackson. The confidential informant purchased methamphetamine from Jackson, who was in his Dodge Charger at the time of the sale. On November 29, 2011, the confidential informant made a second purchase of methamphetamine from Jackson. The officers received information that Jackson traveled to the Dallas-Fort Worth Metroplex to obtain methamphetamine once every week or two weeks.

Investigator Billy Sides, a peace officer employed by the 32nd District Attorney's Office, prepared an affidavit for the installation and use of a mobile tracking device pursuant to Article 18.21, section 14 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 18.21, § 14 (West Supp. 2013). Investigator Sides presented his affidavit to the 32nd Judicial District Judge. In the affidavit, Investigator Sides requested a court order that would authorize the installation and use of a mobile tracking device on Jackson's Dodge Charger. The officers wanted to track Jackson's vehicle so that they would know when he left town. As required by Article 18.21, Investigator Sides stated in his affidavit that he had reasonable suspicion that Jackson was engaging in criminal activity and that the installation and use of a mobile tracking device on Jackson's car was likely to yield information that was relevant to the investigation of the criminal activity. *See id.* art. 18.21, § 14(c)(5). In the affidavit, Investigator Sides detailed the facts and circumstances that gave him such reasonable suspicion.

2

On December 2, 2011, the district judge issued an order in which he authorized law enforcement officers to install a mobile tracking device on Jackson's car for the purpose of following and tracking the car. On December 6, 2011, officers installed a GPS electronic tracking device on the car. The GPS device allowed the officers to monitor the location and speed of Jackson's vehicle at all times. The officers set up the GPS device to provide notification to Investigator Sides on his cell phone whenever Jackson left Colorado City. The officers did not obtain a search warrant.

On the morning of December 12, 2011, Investigator Sides received a cell phone notification that Jackson's car had left Colorado City. The officers started to monitor the car. The GPS device showed that the car was headed toward the Metroplex. At that time, the officers did not know who was driving the car, but they later discovered that Jackson was the driver. An officer who was unaware of the investigation stopped Jackson for speeding near Six Flags in Arlington. After the stop, the GPS device showed that Jackson drove his car to a residential area in Mesquite, where he stayed for about two hours.

Jackson left Mesquite and then drove back toward Colorado City. The officers continued to track his car with the GPS device. Investigator Sides and another officer drove to Taylor County in separate unmarked vehicles, and they began to follow Jackson when they saw his car. At that time, Investigator Sides saw that Jackson was driving the car. The GPS device indicated that Jackson was driving at a speed in excess of the speed limit the entire trip. Investigator Sides testified that the officers also determined, by the use of the speedometers in their unmarked vehicles, that Jackson was speeding. Investigator Sides said that Jackson drove at a speed between 73 and 74 miles per hour in areas where the speed limit was 70 miles per hour.

3

The officers informed Mitchell County Deputy Gary Clark that Jackson was headed to Mitchell County and that Jackson was speeding. Deputy Clark had been involved in the ongoing narcotics investigation of Jackson. Deputy Clark positioned his patrol car in Mitchell County and waited for Jackson to arrive. When Jackson arrived, Deputy Clark used his radar on Jackson's car. The radar showed that Jackson was driving between 73 and 74 miles per hour. Deputy Clark stopped Jackson for speeding. Investigator Sides and the other officer arrived in their unmarked vehicles and stopped at the scene. Deputy Clark contacted Jackson, and Investigator Sides stood by Deputy Clark's vehicle. Investigator Sides heard the conversation between Deputy Clark and Jackson.

Investigator Sides testified that the stop of Jackson was legal for two reasons. First, Investigator Sides said that the officers had probable cause to stop Jackson because they observed him commit the traffic violation of speeding. Second, Investigator Sides said that the officers had reasonable suspicion to believe that Jackson had narcotics in his car and that the reasonable suspicion justified the stop.

Within a few minutes of the stop, Deputy Clark asked Jackson for consent to search Jackson's car. Investigator Sides testified that Deputy Clark asked for consent to search because the officers reasonably believed that Jackson had narcotics in the car. Investigator Sides said that Jackson gave Deputy Clark his consent to search. The officers searched Jackson's car. They quickly found methamphetamine in the trunk. Deputy Clark arrested Jackson for possession of a controlled substance.

Jackson was immediately transported to the police department and then interrogated by the officers. Investigator Sides testified that Jackson was admonished of his rights. Investigator Sides said that Jackson acknowledged his rights, willfully waived his rights, agreed to talk to the officers, and gave a

4

recorded interview. During the interview, Jackson admitted that he purchased the methamphetamine the officers found in his trunk and that he intended to sell it. Jackson told the officers that the seized methamphetamine weighed two ounces. Jackson acknowledged in the interview that he gave the officers consent to search his car.

After the evidence was concluded, the trial court heard arguments from Jackson's counsel and the prosecutor. Following the arguments, the trial court granted Jackson's motion to suppress. The trial court entered the following agreed amended findings of fact and conclusions of law in support of its ruling:

## FINDINGS OF FACT

1. An affidavit for the installation and use of a mobile tracking device pursuant to Article 18.21 § 14, Texas Code of Criminal Procedure, was presented to the 32nd District Court Judge on December 2, 2011.

2. The Order authorizing the installation of a mobile tracking device was signed on December 2, 2011, and on December 6, 2011, an electronic tracking device was installed on the light blue 2006 Dodge Charger, bearing license plate BW1V825, being used by [Jackson] in Mitchell County, Texas.

3. On December 12, 2011, law enforcement used the tracking device to track [Jackson's] vehicle from Mitchell County, Texas, to Mesquite, Texas, and back again.

4. [Jackson's] movements in the car were closely monitored by law enforcement, and very soon after crossing the line back into Mitchell County, [Jackson] was stopped for speeding.

5. [Jackson] gave verbal consent to law enforcement to search his vehicle.

6. [Jackson's] car was searched, and when methamphetamines were found, [Jackson] was arrested.

5

## CONCLUSIONS OF LAW

1.   The installation and use of the mobile tracking device installed by law enforcement officers on [Jackson's] vehicle constitutes a "search" within the meaning of the Fourth and Fourteenth Amendments to the United States Constitution (see United States v. Jones, 565 U.S. ___, 132 S.Ct. 945 (2012)[)].

2.   A warrant was not obtained by law enforcement prior to the installation and use of the mobile tracking device on [Jackson's] vehicle.

3.   Aside from the information gathered from the mobile tracking device, law enforcement would not have known where [Jackson] was, would not have had reason to intercept [Jackson's] vehicle, and therefore did not have probable cause to search [Jackson's] vehicle.

4.   Due to lack of probable cause, all information gathered by law enforcement, including statements of [Jackson], from the time law enforcement installed the mobile tracking device, is excluded from the trial of this case.

The State contends in its first issue that the officers stopped Jackson based on a reasonable suspicion that he committed a traffic violation and that he possessed illegal contraband, that he subsequently consented to the search, and that, therefore, neither probable cause nor a search warrant was required to search his car. The State asserts that, under these facts, the United States Supreme Court's holding in *United States v. Jones*, 132 S.Ct. 945 (2012), is not relevant to this case. In its second issue, the State contends that, if the installation and use of the mobile tracking device on Jackson's car constituted an illegal search under *Jones*, Jackson's commission of the speeding offense and his consent to search were intervening circumstances that attenuated the taint of the illegal search.

6

Accordingly, the State argues that the trial court erred when it granted Jackson's motion to suppress.

Jackson contends that, under *Jones*, the warrantless installation and use of the GPS device on his car constituted an illegal search and that the evidence the officers obtained as a result of the use of the GPS device was tainted by the primary illegality of the officers' use of the device. He asserts that his speeding violation and consent to search did not attenuate the taint of the illegal search. Therefore, Jackson argues that the trial court did not err when it granted his motion to suppress.

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Lujan v. State*, 331 S.W.3d 768, 771 (Tex. Crim. App. 2011). We apply a bifurcated standard of review. *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010); *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). First, we afford almost total deference to the trial court's determination of historical facts. *State v. Castleberry*, 332 S.W.3d 460, 465 (Tex. Crim. App. 2011); *Valtierra*, 310 S.W.3d at 447. The trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Valtierra*, 310 S.W.3d at 447; *Garza v. State*, 213 S.W.3d 338, 346 (Tex. Crim. App. 2007). Second, we review de novo the trial court's application of law to facts. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013); *Hubert*, 312 S.W.3d at 559. We will sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Valtierra*, 310 S.W.3d at 447–48; *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

After the officers used the GPS device on Jackson's car in this case, the Supreme Court decided *Jones*. In *Jones*, the Supreme Court held that the warrantless installation and use of a GPS device on a suspect's vehicle to monitor

the vehicle's movements constitutes a search within the meaning of the Fourth Amendment. 132 S.Ct. at 949. As the trial court concluded in this case, the officers' installation and use of the GPS device on Jackson's vehicle constituted a search under *Jones*.

In *Jones*, the government argued that the installation and use of a GPS device was not a search under the Fourth Amendment. The government argued in the alternative that, if the officers' use of the GPS device constituted a search, the search was reasonable and lawful under the Fourth Amendment because the officers had reasonable suspicion and probable cause to believe that Jones had a leadership role in a cocaine distribution conspiracy. *Id.* at 954. The Supreme Court concluded that the government had forfeited this argument by failing to raise it in the trial court. Thus, the Court declined to consider whether the warrantless use of a GPS device to track a vehicle's movements is lawful under the Fourth Amendment if it is supported by probable cause or reasonable suspicion. *Id.*

Warrantless searches are per se unreasonable under the Fourth Amendment unless the State can prove that the search was conducted pursuant to a recognized exception to the warrant requirement. *Arizona v. Gant*, 556 U.S. 332, 338 (2009); *Wiley v. State*, 388 S.W.3d 807, 818 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). In this case, the State obtained a court order that authorized the installation and use of a GPS device on Jackson's car. The order was based on Investigator Sides's reasonable suspicion affidavit. The State has not argued on appeal that an officer's reasonable suspicion that a suspect is engaging in criminal activity is sufficient under *Jones* to render a search using a GPS device reasonable and legal under the Fourth Amendment. Therefore, we do not decide the issue. The State has not shown that its warrantless search with the GPS device on Jackson's car met an exception to the warrant requirement. Under this circumstance, we must deem

8

that the State's installation and use of the GPS device was illegal for the purpose of our analysis. *Hubert*, 312 S.W.3d at 560.

The State contends that the holding in *Jones* is irrelevant to this case. To support this contention, the State asserts that the stop of Jackson's car was legal for two reasons: (1) that Deputy Clark had reasonable suspicion that Jackson committed a speeding offense because Deputy Clark saw Jackson commit the offense and (2) that the officers had reasonable suspicion that Jackson possessed methamphetamine in his car. The State argues that, because the stop was legal and because Jackson subsequently consented to the search, *Jones* does not apply to the facts of this case.

A police officer may lawfully stop a driver who commits a traffic violation. *Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992). An officer has probable cause to stop and arrest a driver if the officer observes the driver commit a traffic offense. *State v. Gray*, 158 S.W.3d 465, 469–70 (Tex. Crim. App. 2005). In this case, Deputy Clark observed Jackson commit a speeding offense. That observation gave Deputy Clark probable cause to stop Jackson. However, this conclusion does not end our analysis because the illegal search with the GPS device contributed to the stop.

The officers believed that Jackson traveled to the Metroplex to purchase methamphetamine. The officers used the GPS device on Jackson's vehicle to learn when he left town. Thus, as a result of the use of the device, the officers were able to closely track Jackson's movements and speed at a particular time when they thought he was on a trip to purchase methamphetamine. As stated above, the trial court found that "law enforcement used the tracking device to track [Jackson's] vehicle from Mitchell County, Texas, to Mesquite, Texas, and back again" and that "[Jackson's] movements in the car were closely monitored by law enforcement, and very soon after crossing the line back into Mitchell County, [Jackson] was

stopped for speeding." These findings were supported by the evidence. The GPS device showed that Jackson was speeding during his trip. Because the GPS device provided knowledge of Jackson's location to the officers, Investigator Sides and another officer were able to locate Jackson's car in Taylor County and then to follow Jackson from Taylor County to Mitchell County. They informed Deputy Clark when Jackson approached Mitchell County. In the absence of the use of the GPS device, the officers would not have known Jackson's location.

The data obtained from the use of the GPS device enabled the officers to be in a position to stop Jackson for speeding in Mitchell County. Without that data, the stop likely would not have occurred. The evidence supported the trial court's conclusion that, "[a]side from the information gathered from the mobile tracking device, law enforcement would not have known where [Jackson] was [and] would not have had reason to intercept [his] vehicle, and therefore did not have probable cause to search [his] vehicle." The illegal use of the GPS device played an integral part in the execution of the officers' plan to stop Jackson in Mitchell County and then to request his consent to search the car.

The State contends that "there was sufficient reasonable suspicion to stop [Jackson] for possession of a controlled substance due to his status as a probationer, his recent purchases of narcotics from a confidential informant, knowledge of his tendency to procure narcotics in Dallas, and his travel to Dallas and back in one day." A police officer may stop and briefly detain a person for investigative purposes when the officer has reasonable suspicion to believe the person is violating the law. *Foster v. State*, 326 S.W.3d 609, 613 (Tex. Crim. App. 2010); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). A police officer has reasonable suspicion to detain if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to

10

conclude that the person is, has been, or soon will be engaged in criminal activity. *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011).

We note that the evidence showed that Jackson sold methamphetamine to the confidential informant; Jackson did not purchase methamphetamine from the informant. Jackson was on probation for assault and not a drug-related offense. The officers' knowledge of Jackson's trip to Mesquite was of paramount importance to their determination that they had reasonable suspicion to believe that he possessed methamphetamine. Without the use of the GPS device, the officers would not have known that Jackson left Colorado City, that he traveled to Mesquite, that he stayed there for only a short period of time, and that he returned to Mitchell County. Had the officers not known about Jackson's trip to Mesquite, they would not have had reasonable suspicion to believe that he possessed methamphetamine.

Based on the evidence, we conclude that the stop, Jackson's consent to search the car, the discovery of the methamphetamine, and Jackson's statements to the officers cannot be separated from the information obtained from the use of the GPS device, which constituted a search under *Jones*. Therefore, we conclude that the stop violated the Fourth Amendment. The State's first issue is overruled.

In its second issue, the State contends that, if the use of the GPS device on Jackson's car was an unlawful search under *Jones*, Jackson's commission of the speeding offense and his consent to search were intervening circumstances that attenuated the taint of the search. The federal exclusionary rule is a deterrent sanction that bars the prosecution from introducing evidence obtained in violation of the Fourth Amendment. *Davis v. United States*, 131 S.Ct. 2419, 2423 (2011). The Texas statutory exclusionary rule is broader than the federal exclusionary rule; the Texas rule applies to evidence that is obtained in violation of the federal and state constitutions, United States laws, and Texas laws. *See* CRIM. PROC. art. 38.23

11

(West 2005); *Wilson v. State*, 311 S.W.3d 452, 458 (Tex. Crim. App. 2010). Specifically, Article 38.23(a) of the Code of Criminal Procedure provides that "[n]o evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." The primary purpose of Article 38.23(a) is to deter unlawful actions that violate the rights of criminal suspects in the acquisition of evidence for prosecution. *Wilson*, 311 S.W.3d 459.

The "fruit of the poisonous tree" doctrine serves to exclude as evidence direct and indirect products of Fourth Amendment violations. *Wong Sun v. United States*, 371 U.S. 471, 484 (1963); *State v. Iduarte*, 268 S.W.3d 544, 550 (Tex. Crim. App. 2008). However, evidence is not classified as a fruit that must be excluded merely because it would not have been discovered but for the violation. *Wong Sun*, 371 U.S. at 487–88; *Iduarte*, 268 S.W.3d at 550. "Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *Wong Sun*, 371 U.S. at 488 (quoting JOHN MACARTHUR MAGUIRE, EVIDENCE OF GUILT 221 (1959)).

Thus, if the evidence seized is sufficiently attenuated from the violation of the law, the evidence is not considered to be obtained in violation of the law for the purpose of Article 38.23. *Johnson v. State*, 871 S.W.2d 744, 750 (Tex. Crim. App. 1994). Evidence will not be excluded under Article 38.23 if the taint from the illegality has dissipated by the time the evidence is acquired. *Wehrenberg v. State*, 416 S.W.3d 458, 469 (Tex. Crim. App. 2013). To determine whether the discovery of physical evidence is sufficiently attenuated from the violation, we consider three factors: (1) the temporal proximity of the detention and the seizure

12

of physical evidence, (2) the presence of intervening circumstances, and (3) the purposefulness or flagrancy of the police misconduct. *State v. Mazuca*, 375 S.W.3d 294, 301–07 (Tex. Crim. App. 2012).

When police officers find and seize physical evidence shortly after an illegal stop, in the absence of the discovery of an outstanding arrest warrant in between the stop and the seizure, that physical evidence should ordinarily be suppressed, even if the police conduct is not highly purposeful or flagrantly abusive to Fourth Amendment rights. *Id.* at 306. Under this scenario, temporal proximity is the paramount factor. *Id.* In this case, the officers did not discover an outstanding warrant. The officers obtained Jackson's consent to search Jackson's car within a few minutes of the stop. They immediately searched the car and found the methamphetamine. At most, a slight temporal separation existed between the stop and the seizure of the methamphetamine. Based on this fact, the temporal proximity factor, which is the paramount factor in this case, weighs in favor of suppression. The officers interrogated Jackson at the police department soon after they found the methamphetamine. Thus, the temporal proximity factor also favors the suppression of Jackson's statements to the officers.

As to the second attenuation factor, the State argues that Jackson's commission of the "new" speeding offense in Deputy Clark's view and Jackson's consent to search were intervening circumstances that attenuated the taint of the illegal search. The State asserts in its brief that "[Jackson's] stop was not based on the presence of the mobile tracking device, which [Deputy Clark] did not have access to, but rather the use of a Stalker radar unit deployed from [Deputy Clark's] patrol vehicle." The State also asserts that "[t]his wholly separate observation and action in response to a criminal violation attenuates any taint from the deployment of the mobile tracking device." However, as we have explained in detail above, Deputy Clark's stop of Jackson for speeding was closely connected to the officers'

use of the GPS device. The planned stop stemmed from data gathered by the use of the GPS device; it did not result from a "wholly separate observation" by Deputy Clark. The stop was "come at by [the] exploitation" of the information obtained during the illegal GPS search. *See Wong Sun*, 371 U.S. at 488.

The State relies on *Holmes v. State*, 962 S.W.2d 663 (Tex. App.—Waco 1998, pet. ref'd, untimely filed), and *Matienza v. State*, 699 S.W.2d 626 (Tex. App.—Dallas 1985, pet. ref'd), for the proposition that, "[r]egarding intervening factors, the commission of a new offense has generally attenuated the taint of prior unlawful police activity." Both of those cases are distinguishable from this case.

In *Holmes*, a police officer illegally detained the defendant. *Holmes*, 962 S.W.2d at 669. The officer found two partially smoked marihuana cigarettes in the defendant's car. *Id.* at 667. The officer handcuffed the defendant and put the defendant in the front seat of the police car. The officer placed the marihuana cigarettes on the driver's seat of the police car and then continued to work the scene. When the officer returned to his car, the marihuana cigarettes were gone. The officer determined that the defendant had attempted to eat them. *Id.* The court held that the defendant's voluntary commission of the offense of attempting to destroy the evidence was an intervening circumstance that operated to purge any taint from the illegal detention. *Id.* at 669.

In *Matienza*, a police officer detained the defendant outside the defendant's apartment. *Matienza*, 699 S.W.2d at 627. During the detention, the defendant pulled a loaded gun out of his pocket and pointed it at the officer. The officers arrested the defendant for attempted capital murder of a police officer and for unlawfully carrying a weapon. In a search incident to the arrest, the officers found cocaine. *Id.* The court held that the defendant's voluntary criminal act of pointing the gun at the officer constituted an intervening offense that purged the taint of any illegality of the initial detention. *Id.* at 628.

14

In both *Holmes* and *Matienza*, the defendants committed new and serious offenses after they were detained. In this case, Jackson was stopped for driving three or four miles per hour over the posted speed limit. The stop was directly related to the officers' use of the GPS device. Jackson cooperated with the officers after they stopped him. He did not commit a new offense after the stop. We conclude that Jackson's speeding offense was not a sufficient intervening circumstance to dissipate the taint of the primary illegality.

The State also argues that Jackson's consent to search was an intervening circumstance that attenuated the taint of the illegal search. To establish the validity of consent after an illegal search or seizure, the State must prove by clear and convincing evidence that the taint inherent in the illegality had dissipated by the time consent was given. *Brick v. State*, 738 S.W.2d 676, 680–81 (Tex. Crim. App. 1987); *Orosco v. State*, 394 S.W.3d 65, 75 (Tex. App.—Houston [1st Dist.] 2012, no pet.). In that respect, we consider the following factors: (1) the temporal proximity between the unlawful seizure and the given consent; (2) whether the warrantless seizure brought about police observation of the particular object for which consent was sought; (3) whether the seizure resulted from flagrant police misconduct; (4) whether the consent was volunteered or requested; (5) whether the defendant was made fully aware of the right to refuse consent; and (6) whether the police purpose underlying the illegality was to obtain the consent. *Brick*, 738 S.W.2d at 680–81.

In this case, Jackson consented to the search soon after Deputy Clark stopped him. The temporal proximity factor weighs in favor of suppression. Jackson did not volunteer his consent to the search. Rather, Deputy Clark requested his consent. There is no evidence that the officers made Jackson aware that he could refuse consent. Based on the evidence, the trial court could have reasonably concluded that the police purpose underlying the use of the GPS device

15

was to effectuate a traffic stop of Jackson and then to request his consent to search at a particular time when the officers believed he possessed methamphetamine. As explained in our discussion of the third attenuation factor below, the seizure of the methamphetamine did not result from flagrant police misconduct. A majority of the *Brick* factors favor suppression. Based on the evidence, we cannot conclude that the State met its burden to prove that the taint of the illegal search had dissipated when Jackson consented to the search. Therefore, Jackson's consent was not a sufficient intervening circumstance to dissipate the taint of the primary illegality.

As to the third attenuation factor, which is the purposefulness or flagrancy of the police misconduct, the record shows that the officers acted in good faith when they used the GPS device on Jackson's car. Investigator Sides obtained a court order that authorized the installation and use of the GPS device. The officers complied with Article 18.21, section 14 of the Code of Criminal Procedure. The Supreme Court decided *Jones* after the officers used the GPS device on Jackson's car.

The officers' good faith reliance on Article 18.21, section 14 establishes that the misconduct was not flagrant. The officers did not intend to conduct an illegal search. The purpose of the use of the GPS device on Jackson's car was to further the narcotics investigation. The stop did not result from a routine, random traffic stop that was made to enforce the traffic laws. Instead, the officers targeted the stop of Jackson in an effort to obtain his consent to search his car. *See Mazuca*, 375 S.W.3d at 309. Although the officers used the GPS device in connection with their efforts to effectuate a stop and to obtain consent, we conclude that the purposefulness or flagrancy factor weighs in favor of the State because the officers acted in good faith when they used the device.

16

Based on our consideration of the three attenuation factors, we conclude that the discovery of the methamphetamine and Jackson's statements to the officers were not sufficiently attenuated from the illegal GPS search to purge the taint of the illegality. As stated above, when no intervening circumstance exists, temporal proximity is the paramount factor in the attenuation analysis. *Mazuca*, 375 S.W.3d at 306. Because the methamphetamine was discovered a short time after the officers stopped Jackson's car and because there was no intervening circumstance that provided justification for the search of Jackson's car, we conclude that the taint of illegality had not been purged.

Some federal courts have held that evidence obtained as a result of a GPS search that was conducted before the Supreme Court issued its opinion in *Jones* is admissible under the good faith exception to the federal exclusionary rule. *United States v. Fisher*, 745 F.3d 200, 206 (6th Cir. 2014); *United States v. Andres*, 703 F.3d 828, 834–35 (5th Cir. 2013). Under the good faith exception, "searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule." *Davis*, 131 S.Ct. at 2423–24. In *Fisher* and *Andres*, the courts held that it was objectively reasonable for the officers to believe that warrantless tracking was permissible under binding appellate precedent in their respective circuits and that, therefore, the good faith exception to the exclusionary rule applied. *Fisher*, 745 F.3d at 206; *Andres*, 703 F.3d at 834–35.

At oral argument, the State relied on *Taylor v. State*, 410 S.W.3d 520 (Tex. App.—Amarillo 2013, no pet.). Based on *Taylor*, the State asserted that the evidence obtained in this case was not subject to the exclusionary rule because the officers acted in good faith reliance on the law. The Texas legislature has created a statutory good faith exception to the Texas exclusionary rule in Article 38.23(b) of the Code of Criminal Procedure. The scope of the Texas good faith exception is more limited than the scope of its federal counterpart. Article 38.23(b) provides

that "[i]t is an exception to the provisions of Subsection (a) of this Article that the evidence was obtained by a law enforcement officer acting in objective good faith reliance *upon a warrant issued by a neutral magistrate based on probable cause*." CRIM. PROC. art. 38.23(b) (emphasis added).  Thus, an officer's good faith reliance on the law or existing precedent is not recognized as an exception to the Texas exclusionary rule.  The trial court did not err when it granted Jackson's motion to suppress.  The State's second issue is overruled.

We affirm the order of the trial court.


JIM R. WRIGHT
CHIEF JUSTICE


May 30, 2014

Publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.