FILED IN
COURT OF CRIMINAL APPEALS

Janaury 13, 2015

ABEL ACOSTA, CLERK

PD-0823-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 1/13/2015 8:34:44 AM
Accepted 1/13/2015 9:20:30 AM
ABEL ACOSTA
CLERK

IN THE COURT OF CRIMINAL APPEALS
OF THE STATE OF TEXAS

NO. PD-0823-14
(Court of Appeals No. 11-12-00315-CR)
(Trial Court No. 7363)

STATE OF TEXAS, Appellant,

v.

JOHN BERRY JACKSON, Appellee.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

APPEALED FROM THE 32nd DISTRICT COURT
OF
MITCHELL COUNTY, TEXAS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

THE HONORABLE GLEN HARRISON, PRESIDING

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
**APPELLEE'S BRIEF ON THE MERITS**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

JEFFREY A. PROPST
STATE BAR NO. 24064062
P.O. BOX 3717
ABILENE, TEXAS 79604
Tel. (325) 455-1599
Fax (325) 455-1507
Email: jeff@keithandpropst.com

ATTORNEY FOR APPELLEE

# TABLE OF CONTENTS

**<u>SUBJECT</u>**                                                                     **<u>PAGE</u>**

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii-iii

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Issue Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

> The court of appeals did not err in affirming the trial court's decision to suppress evidence, because the evidence had been come at by exploitation of the illegal placement of a GPS tracking device and not by means sufficiently distinguishable to be purged of the taint.

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-3

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Argument and Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-16

Prayer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# TABLE OF AUTHORITIES

**CASES**

*Arizona v. Gant*, 556 U.S. 332, 338, 129 S. Ct. 1710, . . . . . . . . . . . . . 5
173 L. Ed. 2d 485 (2009)

*Armendariz v. State*, 123 S.W.3d 401 (Tex. Crim. App. 2003) . . . . . . 5

*Azeez v. State*, 248 S.W.3d 182, 189-90 (Tex. Crim. App. 2008) . . . . 11

*Brick v. State*, 738 S.W.2d 676 (Tex. Crim. App. 1987) . . . . . . . . . . . 14-16

*Brown v. Illinois*, 422 U.S. 590, 95 S. Ct. 2254, . . . . . . . . . . . . . . . . 6-8, 13
45 L. Ed. 2d 416 (1975)

*Chimel v. California*, 395 U.S. 752, 89 S. Ct. 2034, . . . . . . . . . . . . . 12
23 L. Ed. 2d 685 (1969)

*Crain v. State*, 315 S.W.3d 43 (Tex. Crim. App. 2010) . . . . . . . . . . . . 4, 5

*Kaupp v. Texas*, 538 U.S. 626, 123 S. Ct. 1843, 55 L. Ed. 2d 814 . . . 8
(2003)

*Mazuca v. State*, 375 S.W.3d 294, 306 (Tex. Crim. App. 2012) . . . . . 5-6, 9-14

*United States v. Jones*, 132 S. Ct. 945, 949, 181 L. Ed. 2d 911 . . . . . 5, 9
(2012)

*Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, . . . . . . . . . 6-7, 10-12
9 L. Ed. 2d 441 (1963)

**STATUTES**

Tex. Code Crim. Proc. art. 15.01 . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Tex. Transp. Code §543.003 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Tex. Transp. Code §543.004 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

TEX. TRANSP. CODE §543.005 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

IN THE COURT OF CRIMINAL APPEALS
OF THE STATE OF TEXAS

NO. PD-0823-14
(Court of Appeals No. 11-12-00315-CR)
(Trial Court No. 7363)

STATE OF TEXAS, Appellant,

v.

JOHN BERRY JACKSON, Appellee.

**APPELLEE'S BRIEF ON THE MERITS**

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

**STATEMENT OF THE CASE**

Jackson was charged with possession of more than 4 but less than 200 grams of methamphetamine with intent to deliver. The trial court granted Jackson's motion to suppress, and the State appealed the trial court's ruling. The court of appeals affirmed. *State v. Jackson*, 435 S.W.3d 819 (Tex. App. - Eastland 2014). This Court granted the State's petition for discretionary review on October 8, 2014, and extended the time for the State to file its brief until November 24, 2014. This Court extended the time for the Appellee to file his brief until January 13, 2015.

**ISSUE PRESENTED**

The court of appeals did not err in affirming the trial court's decision to suppress evidence, because the evidence had been come at by exploitation of the illegal placement of a GPS tracking device and not by means sufficiently distinguishable to be purged of the primary taint.

1

**STATEMENT OF FACTS**

Law enforcement placed a GPS tracking device on Appellee Jackson's vehicle. (RR: 12-13). Law enforcement placed the GPS tracking device on Jackson's vehicle without a warrant based on probable cause, but rather based on then article 18.21 of the Texas Code of Criminal Procedure, which requires only a finding of reasonable suspicion. See Tex. Code Crim. P. art. 18.21. (RR: 12 and Def. Ex. 1). No court found that there was probable cause to install a GPS device. (RR: 20). The GPS device allowed law enforcement to closely monitor Jackson at their leisure. (RR: 13, 22-23). Law enforcement was able to save records of Jackson's vehicle's movements and "go back and watch it" when they pleased. (Id.) Law enforcement received notification via cell phone any time Jackson left Colorado City and had the ability to set other parameters on the GPS device for notification purposes. (Id.) As a result of the parameters, law enforcement was notified on December 12, 2011, that Jackson had left Colorado City and traveled to to the Dallas/Fort Worth area. (RR: 13-14). Law enforcement officers used the GPS device to learn that Jackson went to Mesquite, Texas, pulled into a residential area, and stayed for two hours. (RR: 14). Based on the information provided from the GPS tracking device, law enforcement officers in Colorado City were able to learn about the area Appellee was in by talking with law enforcement in Mesquite, Texas. (RR: 14). Using the GPS device, law enforcement officers were able to

2

locate Jackson's vehicle heading west from the Dallas/Fort Worth area through Taylor County and began following him with two unmarked vehicles. (RR: 15, 24-25). Law enforcement officers were able to learn that Jackson was speeding in violation of the traffic code, first by reading the data from the GPS device, and then by observing their own speedometers as they were following Appellee, or "pacing." (RR: 15, 26). Investigator Billy Sides testified that Appellee Jackson was traveling at a speed between 73 and 74 miles per hour in an area where the speed limit is 70 miles per hour. (RR: 7). While still following Jackson, law enforcement officers radioed Deputy Clark, who was in Mitchell County, and alerted him to Appellee's imminent arrival in Mitchell County. (RR: 15). The law enforcement officers who were gathering data from the tracking device told Deputy Clark that Jackson was speeding. (RR: 15). Deputy Clark then positioned himself "right inside Mitchell County," used his radar on Appellee's vehicle, and stopped Jackson for speeding. (RR: 15, 27). Though Appellee was speeding from Taylor County to Mitchell County, law enforcement officers waited until Jackson entered Mitchell County to have Deputy Clark get a radar reading and stop Appellee. (RR: 26). Three officers were present at the stop. (RR: 8). Once stopped, Deputy Clark asked Jackson for consent to search his vehicle, and Appellee consented to the search. (RR: 7-8). Consent was asked for and given within minutes of the stop. (RR: 32). Law enforcement then searched the vehicle

and found illegal drugs. (RR: 8, 32). After the discovery of illegal drugs, Jackson made incriminating statements against himself. (RR: 9).

## SUMMARY OF THE ARGUMENT

This Court should apply the factors in *Brown*. Applying those factors, the State did not carry its burden to show that the confession was voluntary; the complained-of evidence was obtained in close temporal proximity to the illegal search and seizure; and the taint of the primary illegality was not attenuated by the intervening circumstance of Jackson's speeding violation. With regard to the fourth *Brown* factor, the State incorrectly asserts that the most important factor in determining whether the taint is attenuated is whether the officers acted with flagrancy and/or purposefulness. Under *Mazuca*, the most important factor in making the determination is the temporal proximity of the obtaining of the evidence to the illegal search and seizure. Finally, whether Jackson's consent to search was valid is governed by the factors in *Brick*. Considering the *Brown* and *Brick* factors, the taint of the primary illegality was not attenuated and the appellate court's ruling should not be disturbed.

4

**ARGUMENT AND AUTHORITIES**

*Standard of Review*

A trial court's ruling on a motion to suppress is reviewed on appeal for abuse of discretion. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). The trial court is given almost complete deference in its determination of historical facts, especially if those are based on an assessment of credibility and demeanor. *Id*. The same deference is afforded the trial court with respect to its rulings on application of the law to questions of fact and to mixed questions of law and fact, if resolution of those questions depends on an evaluation of credibility and demeanor. *Id*. For mixed questions of law and fact that do not fall within that category, a reviewing court may conduct a *de novo* review. *Id*. A court of appeals must uphold a trial court's ruling on a motion to suppress if that ruling was supported by the record and was correct under any theory of law applicable to the case. *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003). That rule holds true even if the trial court gave the wrong reason for its ruling. *Id*.

The government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search.' *United States vs. Jones*, 132 S. Ct. 945, 949, 181 L. Ed. 2d 911 (2012). Searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment - subject only to

a few specifically established and well-delineated exceptions. *Arizona v. Gant*, 556 U.S. 332, 338, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009). Where evidence is obtained as a result of an illegal arrest or detention, a reviewing court must decide whether the taint of the primary illegality was attenuated. *Mazuca v. State*, 375 S.W.3d 294, 306 (Tex. Crim. App. 2012); *Brown v. Illinois*, 422 U.S. 590, 95 S. Ct. 2254, 45 L. Ed. 2d 416 (1975).

In order to make effective the fundamental constitutional guarantees of sanctity of the home and inviolability of the person, evidence seized during an unlawful search cannot constitute proof against the victim of the search. *Wong Sun v. United States*, 371 U.S. 471, 484, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). "The exclusionary prohibition extends as well to the indirect as to the direct products of such invasions." *Id*. Not all evidence is fruit of the poisonous tree simply because it would not have come to light but for the illegal action of the police. Rather, the more apt question is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint. *Wong Sun*, 371 U.S. at 477-88; *Mazuca,* 375 S.W.3d at 300.

In determining whether the taint has been attenuated, a court should consider the following factors: (1) whether Miranda warnings were given, (2) the temporal proximity of the arrest and the confession, (3) the presence of intervening circumstances, and, (4) particularly, the purpose and flagrancy of the official

6

misconduct. *Mazuca*, 375 S.W.3d at 301-02 (citing *Brown*, 422 U.S. at 603-04). In the absence of the discovery of an outstanding arrest warrant, the factor of temporal proximity becomes paramount. *Mazuca*, 375 S.W.3d at 306-07.

### *Miranda Warnings*

*Miranda* warnings were not given until after Appellee's consent to search, so the factor only applies in determining the admissibility of Jackson's confession.

In considering *Miranda* warnings in the context of an attenuation-of-the-taint analysis, the *Brown* court observed:

> "The question whether a confession is the product of a free will under *Wong Sun* must be answered on the facts of each case. No single fact is dispositive. The *Miranda* warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. But they are not the only factor to be considered…The voluntariness of the statement is a threshold requirement. And the burden of showing admissibility rests, of course, on the prosecution."

*Brown,* 422 U.S. at 603-04. Miranda warnings do not, by themselves, purge the taint of an illegal arrest. *Id*. at 605. Further, the State did not carry its burden at the Motion to Suppress hearing of showing voluntariness and admissibility of the statements. The State presented no writing or recording showing that Jackson voluntarily and knowingly waived his rights. Rather, at most, the State showed mere acquiescence to authority. (RR: 9). Thus, this factor argues in favor of suppression.

7

### *Temporal Proximity*

Temporal proximity and the remaining *Brown* factors are discussed here with relation to (1) the stop, (2) the discovery of the methamphetamine, and (3) Jackson's confession. Because the validity of a defendant's consent following an illegal search is governed by another test, the issue of consent is treated separately, below.

In *Brown v. Illinois*, the court found that a 2-hour passage of time between the defendant's arrest and his first incriminating statement argued in favor of suppression. *Brown*, 422 U.S. at 604-05. In *Kaupp v. Texas*, the Supreme Court found that where there was "no indication from the record that any substantial time passed between *Kaupp's* removal from his home in handcuffs and his confession after only 10 to 15 minutes of interrogation," the temporal-proximity factor argued in favor of suppression. *Kaupp v. Texas*, 538 U.S. 626, 633, 123 S. Ct. 1843, 55 L. Ed. 2d 814 (2003). Here, though no exact amount of time is stated in the record, Investigator Sides testified that "[i]t wasn't very long. Long enough to just find the dope. And then we brought the vehicle in. We had multiple officers there. I believe we brought his vehicle into the police department and took him into the interrogation room. I mean it was fast. We didn't dwell out on the highway at all." (RR: 39). The discovery of the methamphetamine happened just after Jackson consented, before the vehicle was taken to the police department. (RR: 8, 32). The

*Brown* factor of temporal proximity militates in favor of suppression of the stop, the discovery of the methamphetamine, and the confession.

The State argues that the court of appeals misapplied the *Brown* factor of temporal proximity because "the court of appeals measured the time between the stop and the discovery of the methamphetamine," rather than "the time between the 'primary illegality' and the discovery of the evidence." (State's Brief on the Merits, p.7). What the State's argument overlooks is the fact that the "primary illegality" was not merely the placing of a GPS tracking device on Jackson's car, but the *subsequent gathering of data from that device*, which continued right up to the time of the stop. *See Jones*, 132 S. Ct. at 949 (holding not merely that the installation of a GPS device but also the government's "use of that device to monitor the vehicle's movements, constitutes a search.").

The State argues that Deputy Clark, who used radar to determine Jackson's speed, did not rely on the tracking device. (State's Brief on the Merits, p. 7). This is not a meaningful distinction, however, because Deputy Clark did rely on the information being supplied by Investigator Sides, who was relying on the tracking device. (RR: 15).

Finally, this Court has indeed explained that temporal proximity can be the "least important factor - at least relative to the other two." *Mazuca*, 375 S.W.3d at 306. However, this Court has further explained that

> "when the police find and seize physical evidence shortly after an illegal stop, in the absence of the discovery of an outstanding warrant in between, that physical evidence should ordinarily be suppressed, even if police misconduct is not highly purposeful or flagrantly abusive of Fourth Amendment rights. Under this scenario, temporal proximity is the paramount factor."

*Id*. In this case, there was no discovery of an outstanding arrest warrant. Therefore, temporal proximity is the paramount factor.

### *Intervening Circumstances*

The State argues that the deputy's observation of the speeding violation was an intervening circumstance between the primary illegality and the discovery of the methamphetamine sufficient to dissipate the taint. (State's Brief on the Merits, p. 8). However, the traffic stop for speeding was "come at by exploitation" of the primary illegality. *Wong Sun*, 371 U.S. at 477-88; *Mazuca,* 375 S.W.3d at 300. The use of Deputy Clark's radar was merely an extension of the use of the GPS device. The only reason Investigator Sides knew that Jackson had been to Dallas and was driving back to Colorado City was because of the tracking device. (RR: 25). Without the tracking device, Investigator Sides would not have known where Jackson was that day. (RR: 25). Without knowing where Jackson was, Investigator Sides would not have been able to follow Jackson, use the technique of pacing, or call for Officer Clark to sit just inside the county line with a radar gun. The illegal placement of the GPS device allowed law enforcement to easily

10

gather that Jackson was on a particular road going 3 to 4 miles per hour over the speed limit. Though law enforcement then went to the trouble to set up an ostensibly independent radar speed trap, their strategy was informed by the data collected from the GPS tracker.

The State argues that, in general, intervening circumstances naturally follow the primary illegality and may have some element of causation or relativity, but that does not necessarily mean they are tainted. (State's Brief on the Merits, p. 8). The State then cites *Mazuca* as an example supporting this proposition. However, the intervening circumstance in *Mazuca* was the discovery of an arrest warrant. *Mazuca*, 375 S.W.3d at 297. An arrest warrant is fundamentally different than observing a vehicle traveling at a rate 3 or 4 miles over the speed limit. "A 'warrant of arrest' is a written order from a magistrate, directed to a peace officer . . . commanding him to take the body of the person accused of an offense, to be dealt with according to law." TEX. CODE CRIM. PROC. art. 15.01. A peace officer has no choice; he must arrest a person that he knows has a warrant. On the other hand, in the case of a mere traffic stop for speeding, the officer is required to issue a written notice to appear in lieu of arresting the speeder. TEX. TRANSP. CODE §543.003-5; *Azeez v. State*, 248 S.W.3d 182, 189-90 (Tex. Crim. App. 2008). While an arrest pursuant to an arrest warrant always justifies a search of the arrestee and his immediate area, a speeding violation, without more, does not justify a search.

The stop for speeding does not merely "have some element of causation or relativity" to the primary illegality of installing and monitoring with the GPS device; rather, it had been "come at by exploitation of that illegality instead of by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun*, 371 U.S. at 477-88; *Mazuca,* S.W.3d 375 at 300. Law enforcement's traffic stop of Appellee for speeding is too closely connected to the GPS tracking device for the speeding offense to dissipate the taint. For the foregoing reasons, Jackson's traffic violation of speeding is not a meaningful enough intervening circumstance to dissipate the taint of the primary illegality.

### Purposefulness and Flagrancy

The State's argues that, "when intervening circumstances occur, the temporal proximity factor becomes less important and the purposefulness and flagrancy factor becomes the most important consideration." (State's Brief on the Merits, p. 8). The State's argument would thus expand the holding in *Mazuca*, which merely held that the purposefulness and flagrancy factor becomes paramount *when the intervening circumstance is the discovery of an arrest warrant*. *Mazuca*, 375 S.W. 3d at 306. No such expansion of *Mazuca* is warranted or justifiable.

As noted above, an arrest warrant is a special type of intervening circumstance. It orders an officer to arrest a person, leaving no discretion to the officer who becomes aware of it. TEX. CODE CRIM. PROC. ART. 15.01. Once an

arrest occurs the police are justified in searching the arrestee and the area in his immediate control in the interest of officer safety and to preserve evidence. *See Chimel v. California*, 395 U.S. 752, 764, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969). Further, it is the policy of every law enforcement agency in the United States to effect such a search incident to arrest, and it would be absurd for a law enforcement agency not to have such a policy. It would be equally absurd to exclude from evidence that which was found pursuant to a non-discretionary order to arrest a person and the subsequent search incident to arrest.

Driving 3 or 4 miles per hour over the speed limit is not in a special category of intervening circumstances and does not trigger the same application of the *Brown* factors. In such a case, temporal proximity remains the paramount factor. *Mazuca*, 375 S.W.3d at 306.

Still, it may be helpful to fully analyze the flagrancy/purposefulness factor. The *Mazuca* Court identified the following factors as relevant to the question of whether the police conduct was flagrant or purposeful: (1) an officer's regular practice and routines, (2) an officer's reason for initiating the encounter, (3) the clarity of the law forbidding the illegal conduct, (4) and the objective appearance of consent. *Mazuca*, 375 S.W.3d at 305-06.

Appellee concedes that the clarity of the law was poor at the time of the arrest. However, that factor is not dispositive of flagrancy/purposefulness.

The law enforcement officers in the instant case were not engaged in their normal practice or routines. They had monitored Jackson's vehicle for most of the day and driven to another county to intercept and follow Appellee in three counties. The officers had detailed information about Jackson's activities that day, which they were able to obtain at their convenience and leisure.

The officers' reasons for initiating the traffic stop were to obtain consent and search the vehicle for drugs. Investigator Sides all but admitted that this was a pretextual stop to search for drugs. (RR: 16). Unlike *Mazuca*, where there was "no indication that [officers] were making traffic stops for any purpose other than to enforce traffic laws or that they harbored the specific hope or expectation that they might obtain the consent of motorists to search their vehicles" *Mazuca*, 375 S.W.3d at 309, here there is every indication that officers were making the traffic stop for the purpose of obtaining Appellee's consent to search his vehicle in the hope of finding narcotics. This factor argues in favor of Jackson's position even if one accepts that the officers' subjective belief was that they were complying with the laws regarding GPS tracking devices.

### *Consent*

Because the issue of consent triggers the test in *Brick v. State*, a separate analysis is needed. Before it can be determined that evidence derived from a warrantless but consensual search following an illegal arrest is admissible, it must

14

first be found, by clear and convincing evidence, not only that the consent was voluntarily rendered, but also that due consideration of the following factors militates in favor of the conclusion that the taint otherwise inherent in the illegality of the arrest has dissipated: (1) proximity of the consent to the arrest; (2) whether the seizure brought about police observation of the particular object which they sought consent to search; (3) whether the illegal seizure was flagrant police misconduct; (4) whether the consent was volunteered rather than requested by the detaining officers; (5) whether the arrestee was made fully aware of the fact that he could decline to consent and thus prevent an immediate search of the car or residence; (6) and whether the police purpose underlying the illegality was to obtain the consent. *Brick v. State*, 738 S.W.2d 676, 680-81 (Tex. Crim. App. 1987). The burden, of course, is on the state. *Id*. at 681.

The above factors do not militate clearly and convincingly in favor of the conclusion that the taint was dissipated. In fact, most of the *Brick* factors argue for the conclusion that the taint was not dissipated. Deputy Clark asked for consent within minutes of the stop. (RR: 32). Consent was given very soon after the stop. (Id.). There was no delay. (Id.) Consent was not volunteered by Appellee but given in response to a request by Deputy Clark. (RR: 8). Nothing in the record indicates that Jackson was made at all aware of the fact that he could decline to consent. Also, the police purpose underlying the use of the GPS tracking device and the traffic stop was clearly to obtain Appellee's consent to search. In fact,

15

State's counsel took time to address the issue of pretextual stops with Investigator Sides at the Motion to Suppress Hearing. (RR: 16). Investigator Sides, when asked whether he was familiar with pretextual stops, proudly answered, "Very much so; been doing them my career [sic]." (Id.) The reasonable inference is that the traffic stop in this case was pretextual. The second factor of the *Brick* analysis ("whether the seizure brought about police observation of the particular object which they sought consent to search") does not seem to be applicable here.

The only factor arguably in favor of the State's position is "whether the illegal seizure was flagrant police misconduct." Even if this factor is given to the State, due consideration of the *Brick* factors does not clearly and convincingly militate in favor of the state's position.

Further, the record contains scant evidence to show clearly and convincingly that the consent was voluntarily obtained.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellee prays that this Court affirm the order of the court of appeals.

Respectfully submitted,

_____/s/ Jeffrey A. Propst_____
JEFFREY A. PROPST
Texas Bar No. 24064062
P.O. Box 3717
Abilene, Texas 79604
Tel. (325) 455-1599
Fax (325) 455-1507
Cell (325) 280-5081
Email: jeff@keithandpropst.com
ATTORNEY FOR JOHN BERRY JACKSON

## CERTIFICATE OF SERVICE

I certify that on January 11, 2015, a true and correct copy of the Appellee's Brief on the Merits was served on the following by electronic service.

Lisa McMinn
State Prosecuting Attorney
P.O. Box 13046
Austin, Texas 78711
Information@SPA.texas.gov

Barrett Thomas
Assistant District Attorney
100 E. 3rd St., Suite 202
Sweetwater, Texas 79556
barrett@32ndda-tx.us

_____/s/ Jeffrey A. Propst_____
JEFFREY A. PROPST

## CERTIFICATE OF COMPLIANCE

Counsel for Appellee hereby certifies that the foregoing document meets the requirements of Tex. R. App. P. 9.4 and that, based on the word count of the computer program used to generate the document, the document contains 4,045 words. The entire document is written in 14-point font.

_____/s/ Jeffrey A. Propst_____
JEFFREY A. PROPST